CASE 34—ACTION BY FLORIDA GIBSON AGAINST BETTIE H. IRVINE FOR SLANDER.—JAN. 14.

# Irvine v. Gibson.

### APPEAL FROM MADISON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALED. DEFENDANT HAVING DIED PENDING THE ACTION, HER ADMINISTRATOR, I. SHELBY IRVINE WAS SUBSTITUTED AS APPELLANT, AND ACTION REVERSED.

SLANDER—INSANITY AS DEFENSE—INSTRUCTIONS—DEATH OF DEFENDANT—DISPOSITION OF CASE ON REVERSAL—REMITTITUR—IMPOSITION OF TERMS.

Held: 1. Total mental derangement, or an insane delusion on the subject to which slanderous words relate, is a complete defense to an action therefor.

2. In an action for slander, in accusing plaintiff of being the mother of an illegitimate child, the evidence showed that defendant, a married woman, whose husband was exemplary in his conduct towards other women, became diseased, with the result that her mind gave way, and she became possessed of delusions, one of which was · that her husband was unfaithful. When told that her suspicions were groundless, she would cry out with rage. She believed her husband was the father of a child by a young woman harbored by plaintiff, and any woman she met

with a child became to her frenzied imagination the object of her husband's love. This condition was testified to by numerous witnesses, including experts and acquaintances. HELD, that the court should have instructed that if the jury believed defendant, at the time of speaking the defamatory words, was insane, or under a delusion as to her husband's relations with other women, incapacitating her from understanding their meaning, they should find for her.

3. Where a judgment for slander is erroneous, after reversing it the appellate court has no jurisdictiion to order a remittitur of an excessive portion of the recovery, because by reversal the judgment is rendered void.

4. Where, after trial and judgment for plaintiff in an action of slander, defendant appeals and then dies, and the appellate court finds it necessary to reverse the judgment for error in instructions, it can not, to avoid an abatement of the action, impose terms on appellant (defendant's personal representative) by which the judgment may stand as security for any future recovery.

R. W. MILLER, FOR APPELLANT.

## POINTS AND AUTHORITIES.

1. Where the defense is complete and perfect, it is the duty of the court to direct a jury to find for the defendant. Wesley v. L. & N. R. R., 83 Ky., p. 116; Conodeau v. American Accident Company, 95 Ky., p. 286; Neeb v. Hope, 111 Pa. State Repts., p. 145.

2. Malice is a necessary and essential element in slander. Rawles Revision Bouvier's Law Edition, vol. 1, p. 295; Neeb v. Hope, 111 P., State Repts., p. 152; Stewart v. Hall, 83 Ky., p. 380; Hanning v. Bassett, 12 Bush, p. 363; Hart v. Reed, 1 B. M., p. 168; Farris v. Stark, 9 Dana, p. 132; Harper v. Harper, 10 Bush, p. 447; Benton v. McGrew, 39 Fed. Rep., 678; White v. Nicholas, 3 Howard, 266; Biglow on Torts, p. 51, sec. 10; Bromage v. Proser, 4 B. & C., 255; Clark v. Molyneux, 3 Q. B. D., p. 237; Odgers on Libel and Slander, p. 277.

3. An insane person can not entertain that malice which the law requires to create legal liability for wrong. Graham v. Commonwealth, 16 B. M., p. 591; Smith v. Commonwealth, 1 Duvall, p. 225; Shannahan v. Commonwealth, 8 Bush, 464; Fain v. Commonwealth, 78 Ky., p. 183; Buchanan v. Commonwealth, 86 Ky., p. 110; Wilkerson v. Commonwealth, 88 Ky., p. 29.

4. When testimony relating to the speaking of other slan-

derous words than those sued on, is introduced, it is the duty
of the trial judge to caution the jury in terms, that such tes-
timony is admitted only for the purposes of showing malice and
that it can not be considered by the jury in estimating dam-
ages. Letton v. Young, 2 Metcalf, p. 561; Taylor v. Moran, 4
Metcalf, p. 132; Campbell v. Bannister, 79 Ky., p. 205; Green-
leaf on Evidence, vol. 2, secs. 271-418.

5. Evidence of slanderous statements other than those sued
on is competent upon the question of malice, but evidence as
to the damages suffered because of such speaking, is not com-
petent. Letton v. Young, 2 Metcalf, p. 561; Greenleaf on Evi-
dence, vol. 2, secs. 271-418; Campbell v. Bannister, 79 Ky.,
p. 205.

6. Insanity is a complete defense to an action for slander.
Am. & Eng. Ency. of Law, 2d ed., vol. 16, p. 622; Townsend
on Slander, 2d ed. sec. 248, p. 476; Bryant v. Jackson, 6 Hum-
phrey (Tenn.), p. 199; Horner v. Marshall, Admx, 4 Mun.,
(Virginia), p. 466; McDugle v. Coward, 95 N. C., p. 368 and
the notes to this case 26 L. R. A., p. 154.

7. "The said condition is to go in mitigation of damages
and the jury will find for the plaintiff, only the actual damages
sustained by the plaintiff, taking all the facts into consideration"
was an erroneous instruction, as it led the jury to believe that
they could find for the plaintiff damages for all the alleged
slanderous words which had been spoken, and they should have
been limited in the instruction to find only the damages sus-
tained through the words sued on. Letton v. Young, 2 Met-
calf, 561; Campbell v. Bannister, 79 Ky., p. 205.

8. The jury should have been instructed as to the measure of
damage.

9. Where a juror is closely connected by marriage with one
of the parties he is incompetent as a juror, and his failure
to disclose the relationship, upon examination is such miscon-
duct as entitles the party to a new trial.

10. The amount of the verdict to-wit, $30,000, is such as to
shock the conscience of men, and to show that it was given
under the influence of prejudice and passion. L. & N. R. R.
v. Fox, 11 Bush, p. 495; L. S. R. R. v. Minnegal, 90 Ky., p.
374; Standard Oil Co. v. Tierney, 92 Ky., p. 380; L. & N. R.
R. v. Long, 94 Ky., p. 410; Woodruff v. Richardson, 20 Conn.,
p. 238; Haight v. Hoyt, 50 Conn., p. 583; Libby v. Towle, 90
Maine, p. 260; Simpson v. Pitman, 13 Ohio, p. 365; Smith v.
Times Publishing Co., 178 Pa., State Repts., p. 481; Calloway
v. Middleton, 2 A. K. M., p. 372; amount of verdict $1,000;
Grimes v. Coyle, 6 B. M., p. 301, amount of verdict $883; Lo-

Irvine v. Gibson.

gan v. Steele, 1 Bibb, p. 593, amount of verdict $200; Adams
v. Rankin, 1 Duvall, p. 58, amount of verdict $5,000; Macauley
v. Elrod, 16 R., p. 291, amount of verdict $2,500; Sanderson
v. Nicholson, 22 R., p. 225, amount of verdict $3,500; Alcorn
v. Powell, 22 R., p. 1553, amount of verdict $600; Beaver v.
Bowman, 24 R., p. 82, amount of verdict $700; Neeb v. Hope,
111 Pa. State, p. 145, amount of verdict $1,000; Sherwood v.
Kyle, 125 Cal., p. 652, amount of verdict $1,000; Haight v.
Hoyt, 50 Conn., p. 583, amount of verdict $4,000; Kern. v. Brid-
well, 119 Ind., p. 226, amount of verdict $8,000; reduced by
trial court to $2,000; Justice v. Southern Pa. Co., 47 Louisiana
Ann., p. 246, amount of verdict. $500; Libby v. Towle, 90 Maine,
p. 262, amount of verdict $3,000; Simpson v. Pitman, 13 Ohio,
p. 365, amount of verdict $850; Bryant v. Jackson, 6 Humphrey
Tenn., p. 199, amount of verdict $500.

11. In the argument of the case, counsel should be confined to
the law and evidence. Tucker v. Henniker, 4 Chandler (N.
H.) Report, p. 317.

12. In an action for slander, testimony as to the financial
condition of either plaintiff or defendant is incompetent. Gib-
bens v. Burkley & Co., 21 R., p. 1653; Beavers v. Bowan, 24
R., p. 882.

13. No testimony showing the condition of plaintiff's family
is competent. Winendich Muhlhauser Brewing Co. v. Bacon,
21 R., p. 929.

14. It was serious prejudice to the rights of the defendant for
the trial court to adjourn this case over for ten days after all
the plaintiff's testimony was in, and to discharge the jury dur-
ing that time.

15. The death of the regular judge and the appointment of
his sucessor, during the adjournment of this case, ended the
authority and power of the special judge, who had been trying
it, and when the case was called, upon the reassembling of the
court, the swearing of the jury should have been set aside. and
the case reassigned or continued. Kentucky Statutes, sec.
968; Beauchamp v. Commonwealth, 4 R., p. 27; Childers v.
Little, 96 Ky., p. 376.

16. It was error for the court to admit the testimony of
strangers to the suit that they had sued the defendant's hus-
band and recovered money from him, for his wife's slanders.
Letton v. Young, 2 Metcalf, p. 560.

17. In order to render competent the testimony of non-ex-
perts upon the question of insanity, the party offering to tes-
tify must first qualify as a witness, by showing that he is ac-
quainted with and has a knowledge of the party whose sanity

is in question. Broom v. Commonwealth, 14 Bush, p. 398;
Sherley v. Taylor's Heirs, 5 B. M., p. 113.

18. The defendant is entitled to know from the pleadings,
when the words sued on were spoken, and in whose presence
they were uttered.

### ADDITIONAL POINTS AND AUTHORITIES.

1. The powers of the court of appeals of Kentucky are fixed
by the Constitution and the statutes of the State. It is a
court of appellate jurisdiction and no remittitur can be had in it.
Constitution of Kentucky, sec. 110; Kentucky Statutes, sec. 949;
Marchand v. Russell, 78 Ky., 516; Brown v. Morris, 3 Bush,
p. 81; L. & N. R. R. v. Earl's Admr., 94 Ky., 368; Stafford
v. Pawpucket Hair Cloth Co., 2 Cliff, (U. S.), 82; Hollinger
v. Smith, 4 Ala., 367.

2. It is in the interest of a wise and sound public policy that
slander actions should cease. Johnson's Admr. v. Haldeman,
43 S. W., 226.

3. The execution of a supersedeas bond destroys the life of
a judgment, and when an appeal has been perfected and su-
persedeas executed, in an action that abates by the death of
either party to it, and when one of the parties dies with the
appeal thus pending, the suit absolutely abates, and the par-
ties are in the same attitude as if the death had occurred be-
fore verdict and judgment. Kentucky Statutes, sec. 10; Smith
v. Western Union Tel. Co., 83 Ky., 269; Century Dictionary,
defining "Action;" Ency. Plead. & Prac., vol. 5, p. 794; Ire-
land v. Champly, 4 Taunt, 884; Thompson v. Central R. R.,
60 Ga., 120; Long v. Hitchcock, 3 Ohio, 274; Miller v. Umde-
homer, 10 Serg. & R., (Pa.), 31; Harrison v. Mosely, 31 Texas,
608; Maskall v. Maskall, 3 Sneed, (Tenn.), 208, 78 Mo., 547.

4. If the entire action does not abate as above set out, then
the claim has become merged in a judgment, which is a claim
against the estate of the appellant herein, and it is both the
right and duty of her administrator to come in and revive, and
substitute himself as a party, and to thus protect the estate in
all its rights. Turner's Admr. v. Booker, 2 Dana, 334; Gibbs
v. Beecher, 30 Tex., 79; Cox's Admr. v. Whitefield, 18 Ala., 738;
Remmler v. Shenuit, 15 Mo. App., 192; Lewis' Admr. v. St.
L. & I. M. R. R. Co., 18 Mo. Post, 495; Downer v. Howard, 44
Wis., 82; Akers v. Akers, 57 Am. Rep., 207.

5. When the court of appeals reverses a cause for errors
committed in the trial below, it has no power or authority to
modify, limit or extend, a plain statute, but the parties must
stand where a plain and unequivocal statute places them. This

Irvine v. Gibson.

court declares the law. If there is a casus omissus it must be remedied by the Legislature. It can not be supplied by the court.

SMITH & BUSH, J. W. CAPERTON, FOR APPELLANT.

1. Whenever a person conceives something extravagant to exist which has no existence whatever, but in his heated imagination is incapable of being permanently reasoned out of that conception he is under an insane delusion.

2. Now a person who believes something to exist which not only does not exist, but of which he has no evidence sufficient to satisfy any healthy mind which he acted upon or reasons upon, is afflicted with insane delusions. (See Robins v. Adams, 62 Maine, p. 399.)

3. A person who persistently believes supposed facts which have no existence except in his perverted imagination, which are against all evidence and probability and conducts himself however logically upon the assumption of their existence, is so far as they are concerned unde ran insane delusion. (See Re Shaw, 2d Redf., p. 107; Re White, 121 N. Y., p. 406.) And a delusion in that sense is insanity. (See Potter v. Jones, 20 Or., 239 and 12 L. R. A., p. 161.

4. A delusion or hallucination of the mind upon the part of a person accused of crime which renders him unable to know whether the act was right or wrong relieves him from criminal responsibility though he be sane upon all other subjects. (See State v. Huting, 21 Mo.).

### AUTHORITIES CITED.

Letton v. Young, 2 Met., 550; Campbell v. Thompson, MS. Opinion, 1864; Campbell v. Bannister, 79 Ky., 205; Crenshaw v. Burnam, 11 Rep., 437; Greenleaf on Evidence, vol. 2, sec. 218; Jaggard on Torts, vol. 1, pp. 156-7; Sedgwick on Damages, (7th ed.), vol. 2, sec. 540 and notes, 7 Indiana, p. 440; Townsend on Slander, 3d ed., p. 476; Esquirol, a French Medical Philosopher on Insanity, forty years superintending an asylum, pp. 21, 26, 74, 75, 208, 23, 214, 103, 364, 365, 320, 200; See also Ray's Medical Jurisprudence, pp. 139, 142, 162, 167; Holt C. J. City of London v. Vancocker, Carotherd, p. 483.

J. A. SULLIVAN AND J. TEVIS COBB, FOR APPELLEE.

### POINTS AND AUTHORITIES.

1. The death of regular judge did not terminate the powers of the special circuit judge.

Irvine v. Gibson.

2. The death of appellant pending appeal does not terminate the action, even if the case should be reversed.

3. Insanity is not a defense to slander, except as to punitive damages.

4. No malice is necessary to, recover compensatory damages, and implied malice is only a legal fiction, which may be imputed to any person, even a lunatic.

5. Caution of court to jury as to other slanders admitted in evidence was sufficient in this case.

.6. Instruction as to measure or aamages was sufficiently definite and not prejudicial to appellant.

7. It was not error to refuse to define malice in the instructions.

8. Implied malice being a legal fiction may be imputed to a lunatic.

9. Motion for peremptory instruction properly overruled, because the proof overwhelmingly establishes the sanity of the defendant, and her great and permanent injuries.

10. Testimony adduced was during the trial competent for the purpose for which it was introduced.

11. Domestic and social relation and pecuniary condition of the parties was competent evidence.

Judge Guffy's opinion on this question not well considered, and against overwhelming weight of authority.

12. Jury was impartial, and no juror was related to appellee.

13. Nothing in the point that counsel for plaintiff was guilty of any misconduct in argument.

14. Verdict not excessive. In this case the jury had the right to inflict both compensatory and punitive damages. The health of the plaintiff was completely destroyed; she suffered untold anguish of body and mind; she is a confirmed invalid, because of the slanderous statements of the defendant; she has been refused employment as a teacher. Jury had a right to bring in a, verdict not only for compensatory but punitive damages, and under the law and all the circumstances of this case the verdict was not excessive, and the lower court so held. Extracts from the testimony of Miss Gibson; The Fatal Whisper.

15. Motive for the slander.

16. Does the law fail to furnish a civil remedy to the citizen in the protection of his health, character or reputation and occupation against a person partially insane, or is he completely at his mercy.

17. Power of court as to remittitur and imposing terms.

Irvine v. Gibson.

## AUTHORITIES CITED.

1. Effect of the death of the regular circuit judge. Sec. 136, Present Constitution of Kentucky; Mengel v. Jackson, 94 Ky., 472; Sec. 968, Kentucky Statutes; Sec. 971, Kentucky Statutes; Beauchamp v. Commonwealth, 4 Ky. Law Rep., 27; Childers v. Little, 96 Ky., 376; Small v. Reeves, 20 Ky. Law Rep., 459; Roberts v. Cain. 17 Ky. Law Rep., 459; McFarland v. Burton, 89 Ky., 294; Logan v. Gibbs, Lit. Select Cases, p. 19; Turner's Admr. v. Booker, 2 Dana, 334; Pope v. Welsh, 18 Ala., 636; Comstock v. Dodge, 43 Howard, 107; Akers v. Akers, 16 Lea. (Tenn.).

2. Instructions given and offered, whether insanity is a defense. Williams v. Hays, 26 L. R. A., 155; Buswell on Insanity, sec. 355; Cooley on Torts, pp. 98, 100; Weaver v. Ward, p. 134, Hobart's Rep., Pub. in 1646; Hale, Bacon's Abridgment; Morse v. Crawford, 17 Vt., 499; McIntyre v. Sholty, 121 Ill., 660; Jewell v. Colby, (N. H.); Ward v. Canatzer, 4 Bax., 64, 3 Sneed, 680; Krom v. Schoormaker, 3 Bush, 647; Morain v. Deblin, 132 Mass., 87; Williams v. Hays, 26 L. R. A., 153.

3. Malice in slander. Ulrich v. N. Y. Press Co., 23 Misc., 168 (N. Y.), 18 vol A. & E. Ency. Law, (2d ed.), 1002 and 1003; Lehrer v. Elmore, 100 Ky., 59, 2 Bouvier, p. 92, note 4; Courier-Journal Co. v. Sallee, 104 Ky., 335; Louisville Press. Co. v. Tennelly, 105 Ky., 365, 375; Jones v. Todd, 21 Ky. Law Rep., 382; Bishop, sec. 257; Nicholson v. Dunn, 21 Ky. Law Rep., 644; Nicholson v. Rust, 21 Ky. Law Rep., 647; Nicholson v. Merritt, 22 Ky. Law Rep., 914.

4. Insanity not a defense. A. & E. Ency. Law, (2d ed.), 1060, and notes, 26 L. R. A., note; Yeates v. Reed, 4 Blackf., 463, 32 Am. Dec., 43; Dickinson v. Barber, 9 Mass., 225, 6 Am. Dec., 58; Bryant v. Jackson, 6 Humph., 199; Ward v. Conatser, 4 Baxt., 64; Horner v. Marshall, 5 Munf., 466; McKee v. Ingalls, 5 Ill., 30; Reed v. Harper, 25 Iowa, 87, 95 Am. Dec., 774; Horner v. Marshall's Admx., 5 Munf., (Va.), 466; Winthrow v. Simpson, 37 W. Va., 757.

5. Caution as to other slanders. Letton v. Young, 2 Met., 558; Taylor v. Morgan, 4 Met., 126; Sharp v. Bowlar, 103 Ky., 282.

6. Instruction as to measure of damages. 83 sec., Civil Code; Hargan v. Purdy, 93 Ky., 424; Louisville Press Co. v. Tennelly, 105 Ky., 365; Lehrer v. Elmore, 100 Ky., 56; Nicholson v. Dunn, 21 Ky. Law Rep., 643; A. & E. Ency. Law, (2d ed.), vol 18, p. 1081; K. C. R. R. Co. v. Ackley, 87 Ky., 283; Burt v. McBain, 29 Mich., 260; Zeliff v. Jennings, 61 Tex., 458;

Letton v. Young, 2 Met., 561; Montgomery v. Commonwealth, 88 Ky., 509.

7. Domestic and social relations, and pecuniary condition of the parties. Perrin v. Winter, 73 Iowa, 645; Palston v. Lee, 54 Missouri, 291; Palmer v. Haskins, 28 Barb., (N. Y.), 90; Fowler v. Chicester, 26 Ohio St., 9; Fenstermaker v. Tribune Pub. Co., 13 Utah, 532; Buchstaff v. Hicks, 94 Wis., 34.

8. Social relations of plaintiff is competent. Enquirer Co. v. Johnson, 72 Fed. Rep. (C. C. A.), 443; Press Pub. Co. v. Mac-Donald, 63 Fed. Rep., 238; Turner v. Heorst, 115 California, 527; Dixon v. Allen, 69 California, 527; Crossdale v. Bright, 6 Houst (Delaware), 52; Tolleson v. Posey, 32 Ga., 372; Pettor v. Mict., 50 Ill., 511; Holsey v. Brooks, 20 Ill., 116; Karney v. Palsey, 13 Iowa, 89; Humphries v. Parker, 52 Maine, 502; Lorned v. Buffinton, 3 Mass., 546. Only dissenting opinion on this point, Gandy v. Humphreys, 35 Ala., 617.

9. Social relations of defendant competent. Broughton v. McGrew, 39 Fed. Rep., 672; Nailor v. Ponder, 1 Morv. (Del.), 408; Justis v. Kerlin, 17 Ind., 588; Ellis v. Whitehead, 95 Mich., 105; Lewis v. Chapman, 19 Barb. (N. Y.), 252; Harmon v. Cundiff, 82 Va., 239; Mathien v. Forget of Rev. (Canada), 669.

10. The fact that the plaintiff has a family may be proven. Enquirer Co. v. Johnson, 72 Fed., 443; 66 Cal., 677, 94 Cal., 29; Clements v. Maloney, 55 Mo., 352; Barnes v. Campbell Co. N. H., 27; Errors v. Errors, 135 N. Y., 609; 66 Pa. St., 141, 2 Whart (Pa.), 313.

11. *Inquiry is as to the financial standing of defendant in community.* Barber v. Barber, 33 Conn., 335; Bennett v. Hyde, 6 Conn., 24; Jones v. Greeley, 25 Fla., 629; Tolleson v. Posey, 32 Ga., 372; Hintz v. Graupner, 138 Ill., 158; Hosley v. Brooks, 20 Ill., 115; Fowler v. Wallace, 131 Ind., 347; Binford v. Young, 115 Ind., 175; Karney v. Paisley, 13 Iowa, 89; Humphies v. Parker, 52 Me., 502; Brown v. Barnes, 39 Mich., 211; Ellis v. Whitehead, 95 Mich., 105; Loranger v. Loranger, 115 Mich., 681; Trimble v. Foster, 87 Mo., 49; Taylor v. Pullen, 152 Mo., 434; Arnold v. Savings Co., 76 Mo. App., 159; Buckley v. Knapp, 48 Mo., 153; Hayner v. Cowden, 27 Ohio St., 292; Adcock v. Marsh, 8 Ired., 7 (30 N. Car.), 360; Reeves v. Winn, 97 N. Car., 246; Waggoner v. Richmond, Wright (Ohio), 173; Burckhalter v. Coward, 16 S. Car., 435; Rea v. Harrington, 8 Vt., 181 18 vol., 1096-7 and notes, (2d ed.), A. & E. Ency. Law; Gore v. Chadwick, 6 Dana, 477 (Ky.); L. C. & L. R. R. Co. v. Mahoney's Admx., 7 Bush, 238 (Ky.); Crosby v. Bradley, 11 Ky. Law Rep., 954, (Superior Court); Givens v. Berk-

Irvine v. Gibson.

ley, 21 Ky. Law Rep., 1653; A. & E. Ency. Law, vol. 5, p. 65; Mo. R. R. Co. v. Lyde, 57 Tex., 505; A. & E. Ency. Law, vol. 5, p. 64, also 47.

12. Social relation of defendant. Lewis v. Chapman, 19 Barb. (N. Y.), 22.

OPINION OF THE COURT BY JUDGE SETTLE—REVERSING.

The appellee, Florida Gibson, a young woman of excellent character, residing in Madison county, instituted in the circuit court of that county an action for slander against the appellant, Bettie H. Irvine, and her husband, I. Shelby Irvine, laying her damages at $30,000. These are the slanderous words set forth in the petition, viz:

"Florida Gibson left here this summer, and had a baby, and I know it is so." It is averred in the petition that the slanderous words were falsely and maliciously spoken and published by Bettie H. Irvine of and concerning the appellee, and though it appears from the bill of evidence, made a part of the record, that other harsh and false charges derogatory to the character of the appellee were made by Mrs. Irvine, the words complained of were shown to have been spoken but one time, and in the hearing of but one person. I. Shelby Irvine entered a motion to require the appellee to elect which of the defendants she would prosecute her action against, which motion was sustained by the lower court. Appellee elected to prosecute her action against Bettie H. Irvine, which caused its dismissal as to I. Shelby Irvine. Thereafter I. Shelby Irvine, as the husband of Bettie H. Irvine, and assuming to act as her next friend, filed an answer to the petition, in which it was averred that she was a person of unsound mind and unable to defend the action for herself, and that if the slanderous words were spoken by her it was when she was of unsound mind and unable to understand what she said,

or the meaning of the words used. On motion of appellee this answer was by the court stricken from the file, and the court then appointed two able and experienced members of the Madison county bar guardians ad litem to defend for Bettie H. Irvine. The guardians ad litem by answer set up for their ward the defense that the words complained of were not spoken by her, or, if they were spoken, that she was at the time of the speaking laboring under a pronounced and well-defined monomania or delusional insanity upon the subject of her husband's relations with women, which incapacitated her from knowing what she said of the appellee, or the meaning or effect of the words complained of. In addition, the answer contains the following testimonial to the appellee's character: "They further state that the plaintiff is a woman of most excellent character, esteemed by her friends, and respected by the community as a woman of pure life and chaste character." The answer of the guardians ad litem, except as to the testimonial to appellee's character, was controverted by the reply filed by the appellee, and upon the issues thus formed the case went to trial, which resulted in a verdict and judgment for the appellee for $30,000 in damages.

The guardians ad litem entered motion and grounds for a new trial, which was refused by the trial court, and the case is now before us for review upon the appeal of Bettie H. Irvine, by the guardians ad litem. And Bettie H. Irvine having died since the taking of the appeal, the same has been revived in the name of I. Shelby Irvine, administrator of her estate, he having been appointed as such administrator by the Madison county court.

The grounds relied on for a new trial are eighteen in number, but as, in our view of the case, the fourth ground authorized the granting of the new trial asked, it will not

be necessary to consider the others.    This ground complains of the failure of the lower court to instruct the jury that insanity or monomania was a complete defense to the action.    In other words, it is contended by the appellants that the lower court should have either peremptorly directed the jury to find for the appellant, Bettie H. Irvine, or instructed them that if they believed from the evidence that at the time of the speaking of the slanderous words, if she did speak them, she was of unsound mind, that is, laboring under such monomania or delusional insanity upon the subject of her husband's relations with other women as to incapacitate her from knowing what she said in using the slanderous words of appellee complained of, or the meaning or effect of such words, they should find for the defendant.

Mr. Justice Cooley, in his admirable work on Torts, discusses at great length the responsibility of lunatics for torts.    He seems to be of the opinion that though they can not, because of the absence of a criminal intent, be punished for acts that would be criminal if committed by a sane person, nevertheless in certain cases they or their estates may be held civilly liable for torts committed by them, but that they nor their estates are responsible in actions for slander or libel.    An illustration of this point may be found on page 99 of the volume supra, where it is said: "The case of an injury suffered at the hands of a lunatic furnishes us with an apt illustration.  Let it be supposed that one of this unfortunate class meets a traveler on the highway, and by force or by terror of his threats takes from him his horse and vehicle, and abuses or destroys them. In a sane person this may be highway robbery; but the lunatic is incapable of a criminal intent, and therefore commits no crime.    Neither is the case one in which a contract

to pay for the property or for the injury can be implied,
for the law can imply no contract relations where the ca-
pacity to enter into them is withheld.    But a plain wrong
has been done, because the traveler has been deprived of
his property, and, if the person at whose hands the wrong
has been suffered is possessed of an estate from which
compensation can be made, no reason appears why this
estate should not be burdened to make it.    In other words,
it seems but just that the consequences of the unfortunate
occurrence should fall upon the estate of the person com-
mitting the injury rather than upon that of the person who
has suffered it. . . .   One eminent law writer has doubt-
ed if there ought to be any responsibility in such a case.
In the case of a *compos mentis,* he says, although the in-
tent be not decisive, still the act punished is that of a party
competent to foresee and guard against the consequences
of his conduct, and inevitable accident has always been
held an excuse.    In the case of a lunatic, it may be urged
both that no good policy requires the interposition of the
law, and that the act belongs to the class of cases which
may well be termed inevitable accident."    In discussing
whether a person of unsound mind is responsible for slander-
ous or libelous words, Mr. Cooley further says: ". . .
It has been seen that in some cases malice is a necessary
ingredient of the tort.    How can a *non compos* be respon-
sible in such cases; such, for instance, as a malicious pros-
ecution or libel?    Legal malice certainly can not be im-
puted to one who in law is incompetent to harbor an intent.
It would seem a monstrous absurdity, for instance, if one
were held entitled to maintain an action for defamation
of character for the thoughtless babbling of an insane per-
son, or for any wild communication he might send through
the mail or post upon the wall.    There can be no tort in

these cases, because the wrong lies in the intent, and an intent is an impossibility.   The rules which preclude criminal responsibility are strictly applicable here, because there is an absence of the same necessary element.  And if, in the case of defamatory publications, it may be said that, after all, the requirements of malice as an element in the wrong is only nominal, still there can be no tort because presumptively the utterances, or rather publications, which proceed from a diseased brain, can not injure." Cooley on Torts, p. 103.

"In reason, an insane person can not have the malice essential in slander and libel.  And this doctrine may be deemed to be sufficiently, though not very firmly, established."  Bishop, Noncontract Law, section 506.

"Inasmuch as malice, actual or implied, is an element of slander, a person is not liable in damages therefor, if, at the time of speaking the defamatory words, he was totally deranged, or was the victim of insane delusion on the subject to which the words related."   16 Am. & Eng. Ency. Law (2d Ed.) 622.

"Insanity is a complete defense to an action for slander or libel."   Townsend on Slander (3d Ed. section 248; Bryant v. Jackson, 6 Hump. (Tenn.) 199; Horner v. Marshall, 5 Munf. (Va.) 466; McDougald v. Coward, 95 N. C., 368.

This court is asked for the first time to say whether or not insanity is a good defense in an action of slander. In view of the authorities supra, we are of the opinion that the question should be answered in the affirmative.   Insanity, however viewed anciently, is in modern times deemed a visitation from God, a disease or malconstruction of the mind. If God does not hold accountable for their misdeeds those whom he suffers to be thus afflicted, shall his creatures, intrusted with the enforcement of human laws, re-

fuse to excuse their ostensible evil doing.  Surely not.
But while such is our view of the law, we would say that,
in order to defeat a recovery in a case like the one at bar
upon the ground of insanity, it should satisfactorily
appear from the evidence that at the time of speaking the
defamatory words the person uttering them was either
totally deranged, or laboring under an insane delusion on
the subject to which the words related.    In considering
the evidence introduced as to the condition of mind of
the unfortunate woman against whom the recovery was
had in this case, we have been profoundly impressed by its
weight and force.    Without undertaking to discuss it in
detail, or to mention the names of witnesses, we find that
it manifests the facts that Mrs. Irvine was the fortunate
possessor of practically unlimited wealth, a happy home,
and devoted husband.    It seemed to be the constant aim
of the husband to minister to her happiness.    Both time
and money were lavishly expended by him in the effort to
restore her health and surround her with all that makes
life desirable.    She was apparently as devoted to her hus-
band as he was to her.    During all their married life he
gave her no cause to doubt his affection for or loyalty to
her, and in his relations with respect to other women his
conduct was exemplary in the extreme.    But with the
passing years disease, such as sometimes afflicts her sex,
came upon her, insidiously at first, but later with such
force as to undermine her constitution, wreck her health,
and practically destroy her mind.    For fifteen years be-
fore her death she was thus afflicted.    Repeated opera-
tions were performed upon her by the best and most ex-
perienced physicians and surgeons, and she was taken by
her husband to sanitariums and health resorts in the effort
to restore her health, but without avail.    According to the

Irvine v. Gibson.

evidence, soon after the disease fastened upon her body, her mind began to give way, and about four years before her death her health became so impaired that she was possessed of delusions and imaginings, which for the remainder of her life controlled her actions, dominated her will, and wrecked her mind.    From an affectionate and trusting wife she, without cause, became jealous and suspicious of her husband, and her mind dominated by the delusion that he was unfaithful to her.  When laboring under these delusions she was incapable of being reasoned with, or of knowing or understanding what she said or did.    When told that her suspicions against her husband were groundless, and her charges of infidelity on his part untrue, she would grow excited, and cry out with rage.    She was especially under the delusion that her husband had become the father of a child by a young woman who lived with the appellee, and she, without cause, accused the latter of harboring the mother and child. Any woman that she met, particularly one with a child, became to her disordered mind and frenzied imagination the object of her husband's love.    This condition of Mrs. Irvine's mind was established by the testimony of divers witnesses, several of them the most distinguished physicians and specialists on diseases of the mind in the country; others being business men, friends, and neighbors of herself and her husband, who knew her well, and had every opportunity to become acquainted with her condition of mind.    These witnesses all agree that her mind was disordered, and her reason dethroned, on the subject of her husband's relations with other women.    The physicians testified that her disease of mind was known as monomania, and that it was incurable.    There were witnesses introduced by the appellee who testified to the effect

that Mrs. Irvine was of sound mind, but all of these witnesses were non-experts, and only two, certainly not more than three of them, had such association with or knowledge of Mrs. Irvine as gave them opportunity to testify understandingly in regard to her mind. What they stated amounted in the main to mere expressions of opinion, with little to base the opinion upon.

It was said by this court in Brown v. Commonwealth, 14 Bush, 398, in discussing non-expert evidence on the question of insanity: ""Opinions of witnesses derived from observation are admissible in evidence when, from the nature of the subject under investigation, no better evidence can be obtained." Again: "The court must be satisfied that the witness has had an opportunity, by association and observation, to form an opinion as to the sanity of the person in reference to whom he is to speak." Tested by this rule, we incline to the opinion that the testimony of all but three of appellee's witnesses as to the condition of Mrs. Irvine's mind was of little, if any, value, and much of it incompetent.

If correct in our view of the law of this case, it follows that the instructions of the lower court to the jury were altogether erroneous. In addition to the customary and general instruction setting forth the grounds which, if sustained by the evidence, would authorize the jury to find for the plaintiff, the court should have instructed them as to the measure of damages; and, finally, that if they believed from the evidence that at the time of the speaking of the defamatory words by the defendant she was insane, or laboring under delusional insanity upon the subject of her husband's relations with women which incapacitated her from knowing or understanding the meaning of the defamatory words, they should find for the defendant.

It is proposed of record by the appellee that this court, in the event it should find the amount of the verdict and judgment excessive, may, instead of reversing the judgment, reduce the amount thereof to such a sum as it may deem proper.      We are of the opinion that we are not authorized to enter the remittitur.      If the judgment is erroneous, we can only reverse it, and our jurisdiction over the case ceases with its reversal. The remitittur can not be entered after the reversal, for the further reason that there will be nothing upon which it can operate, because by the reversal the judg-ment is rendered void.  And by such a course of action as is here proposed, the parties in other cases, following the pre-cedent thus set, by like means would avoid the consequences of erroneous proceedings, to the prejudice of those against whom they were committed.

It is also insisted for appellee that iff the court should find it necessary to reverse the judgment of the lower court it should put the appellant upon terms by requiring him to enter his assent of record that the present judgment shall stand as security for whatever damages may be found for appellee upon a second trial, and Turner's Adm'r v. Booker, 2 Dana, 334, is relied on in support of this contention. We are unable to grant this request, because without power to do so; nor do we regard Turner's Adm'r v. Booker, *supra,* as authority in point.   The judgment in that case went against Turner in the lower court by default.   He moved for a new trial, for cause set out in his affidavit.   The motion was laid over to the succeeding term, before which time Turner died.   The judgment was all the while sus-pended by the motion for a new trial.   The motion for a new trial was finally ovverruled by the lower court, and upon appeal to this court it was held that the affidavits presented by Turner in the lower court were sufficient to

authorize a new trial; consequently the case was reversed; but, as a naked reversal would operate to abate the action altogether, upon its return to the lower court on account of Turner's death it was deemed just to put the administrator of his estate upon terms, as was done, because it was not the fault of Booker, but that of Turner, that he did not make defense before judgment and obtain a trial of the case upon its merits. The court therefore refused to allow his fault to be made the possible instrument of a great injustice. The case at bar is wholly different. Here there was a trial; the appellant administrator, his deceased wife, and her guardians *ad litem* are without fault, but grave errors were committed by the lower court to appellant's prejudice, resulting in a verdict for damages with one exception unprecedented in this State as to amount. In that case the motion for a new trial only suspended execution against Turner. Here the rights of the surety on the supersedeas bond have intervened, and will be affected. This court can only declare the law, though the effect of its so doing in this case will be to abate the appellee's action upon its return to the lower court because of the death of the appellant, Mrs. Irvine.

For the reasons indicated the judgment is reversed, and cause remanded, with directions to the lower court to set aside the verdict and judgment and dismiss the petition.

Petition for rehearing by appellee overruled.