# Chesapeake & Ohio Railway Co. v. Francisco.

## Same v. Childers.

## Same v. Bowling.

(Decided June 21, 1912.)

## Appeals from Pike Circuit Court.

1. Railroads—Master and Servant—Passenger—Liability of Railroad For Assault On and Abuse of Passenger by Conductor While Insane.—A railroad company is liable in compensatory damages to a passenger who is assaulted, abused and insulted by a conductor, while acting within the scope of his employment and engaged in attending to the company's business, even if he be insane at the time.

2. Railroads—Verdict—Excessive.—In an action for damages by a passenger for being assaulted, abused and insulted by a conductor evidence examined, and held that a verdict of $600 is not excessive.

J. M. YORK for appellant.

CHILDERS & CHILDERS and ROSCOE VANOVER for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

These three appeals, involving the same questions, will be considered together.

Plaintiff, Bryant Francisco, alleges that on September 15, 1909, while he was a passenger on defendant's train from Hellier to Pikeville, defendant's conductor, Jack O. Johnson, assaulted, cursed and abused him.

Plaintiff, Plenny Childers, alleges that while a passenger on defendant's train in the month of August, 1909 defendant's conductor, Jack O. Johnson, cursed and abused him.

Plaintiff, Martin Bowling, alleges that while a passenger on defendant's train in the month of August, 1909, defendant's conductor, Jack O. Johnson, assaulted, cursed and abused him.

The actions were brought against the railway company and Jack O. Johnson. In each case damages in the sum of $2,000 were asked. In each case the railway company and Johnson filed a joint answer, denying the allegations of the petition. The answers were verified by Johnson on January 3, 1910. During the month of Sep-

tember, 1911, the railway company filed a separate amended answer in each case, wherein it pleaded that at the time complained of in the petition, the conductor, Jack O. Johnson, was partially insane, and his mind was so far demented that he did not know right from wrong, or what he was doing, and within a short time thereafter. Johnson was convicted of lunacy and sent to the asylum for the eastern district of Kentucky, at Lexington; and at the time of the filing of the answer, he was hopelessly insane. The allegations of the amended answer were controverted of record.

A trial before a jury resulted in each case in a verdict for $600 against the railway company. The railway company appeals.

The evidence in each case sustains the allegations of the petition. Indeed, it was practically admitted that the conductor on the occasions in question did, in the presence of other passengers, curse and abuse plaintiffs, and treat them in an outrageous manner. The only defense made by the railway company was that Johnson was insane. The company's physician testified that in his opinion Johnson was unbalanced at the time he abused plaintiffs. He observed Johnson, and was confident of this fact, not only from what he saw, but from the further fact that Johnson subsequently became hopelessly insane. Although aware of the fact that Johnson was unbalanced, he did not communicate this fact to the officers of the road. For plaintiffs, there was some proof to the effect that Johnson's manner towards passengers was all right except when he was drinking, and that on the occasions referred to he was drinking.

The court, in each case, instructed the jury as follows:

"1. The court instructs the jury that it was the defendant company's duty to give plaintiff courteous treatment while he was a passenger on its train, and if the jury believe from the evidence that Jack O. Johnson, conductor in said train, cursed plaintiff in anger or used insulting or abusive language in anger to plaintiff in the presence and hearing of other passenger or passengers, and thereby humiliated plaintiff or caused plaintiff to suffer mental anguish, they will find for the plaintiff such sum in damages as they may believe from the evidence will reasonably compensate plaintiff for such humiliation or mental anguish if any he suffered. so that the sum so found does not exceed two thousand dollars, and if the

jury do not believe and find, they will find for the defendant.

"2. The court instructs the jury if they believe from the evidence that said Jack O. Johnson, conductor on said train cursed plaintiff in anger or used abusive or insulting language in anger to the plaintiff in the presence and hearing of other passengers, and that same was done wantonly and wilfully, or done with reckless indifference to the rights of the plaintiff as a passenger on said train, then the jury is not confined to compensatory damages as in instruction No. 1, but in their discretion may or may not give plaintiff exemplary or punitive damages as a punishment for said wrongful act, so that the whole sum so found does not exceed two thousand dollars.

"3. The law presumes every man sane until the contrary is shown by the evidence, and if the jury should beliyeve from the evidence that the conductor, Jack O. Johnson, was at the time of the injury complained of without sufficient reason to know what he was doing, or that as a result of mental unsoundness he had not then sufficient will power to govern his actions or conduct by reason of some insane impulse which he could not control, then and in that event the jury although they should find for the plaintiff, could not find for the plaintiff punitive or exemplary damages as defined in the second instruction.

"4. The jury will also consider the evidence as to the condition of the said Johnson's mind in mitigation of actual or compensatory damages, if they should believe plaintiff entitled to actual or compensatory damages as defined in the first instruction."

The railway company, after its objections to the foregoing instructions were overruled, moved the court to give the following instruction:

"If the jury believe from the evidence at the time of the utterance of the abusive words set out in the petition to the plaintiff by Jack O. Johnson, conductor of defendant's train was so far demented or of unsound mind, as not to know the extent of his acts, and the defendant company could not by the exercise of reasonable diligence have discovered his mental condition before the alleged abusive language then the jury will find for defendant company."

It is first insisted that the court erred not only in the instructions given, but in refusing to give the instruction offered by the railway company.

While certain eminent law writers have criticised the doctrine, it may be stated that by the great weight of authority the law is well settled, that an insane person, to the extent of compensation, is just as responsible for his torts as a sane person; and this rule applies to all torts, except, perhaps, those in which malice, and, therefore, intention, actual or imputed, is a necessary ingredient, like libel, slander and malicious prosecution. Some of the courts have based the doctrine upon the principle that, where one of two innocent persons must bear a loss, he must bear it whose act caused it. The additional reason has been given that public policy requires the enforcement of the liability that the relatives of a lunatic may be under inducement to restrain him, and that tort-feasors may not simulate or pretend insanity to defend their wrongful acts, causing damage to others. Young v. Young, 141 Ky., 76; Cooley on Torts, p. 99; Irvine v. Gibson, 117 Ky., 306; Boswell on Insanity, section 355; 22 Cyc., 1211; Williams v. Hays, 143 N. Y., 442; McIntire v. Sholty, 124 Ill. App., 605; Bacon's Abridgement, p. 7; I. Hale P. C., 15; Robarts Reports, p. 134.

If an insane person is liable in compensatory damages for an injury inflicted by him, we perceive no good reason why the master should not be held liable for the tort of an insane servant while acting within the scope of his employment, and engaged in attending to the master's business. / Though the person injured and the master may both be innocent, yet it is the master's servant who causes the injury, and, therefore, the master should bear the loss. Besides, in case of passengers injured by the negligence or tort of one of its employees, a railroad company may not escape liability because it used ordinary care in hiring competent employees. It matters not what degree of care the railroad company may have exercised in this respect, it is still liable for the negligent or tortious act of such employee while acting within the scope of his employment. Ignorance of an employee's incompetency does not excuse it. When acting through a conductor as its agent, it is liable for an injury inflicted by him upon a passenger, whether such injury be the result of negligence, wilfulness or unsoundness of mind, and without regard to its inability to discover, by the exercise of reasonable diligence, that his conduct and habits, or his mental capacity, were such as to induce a reasonable belief that such acts would follow. We therefore conclude that the railway company is liable in these

actions to the extent of compensatory damages, regardless of whether the conductor was sane or insane at the time of the injuries complained of. It follows, therefore, that the trial court did not err in refusing the instruction offered by the railway company.

While the fact that the conductor acted as he did, coupled with his subsequent confinement in a lunatic asylum, is a strong circumstance tending to show that he was insane at the time complained of, yet the company's physician, when testifying to the conductor's incompetency, went no further than to say that he was unbalanced at that time. The fact remains that after that time he continued for several months to act as conductor on one of defendant's trains, and as late as January 3rd, he verified the answers filed in this case. There is also proof to the effect that he was polite and courteous when sober, but was abusive and insulting when drinking; and at the time complained of he had been drinking. Then, too, notwithstanding the fact that the company's physician states that the conductor was unbalanced, he admits that he did not call the attention of the officers of the road to this fact. Under these circumstances, we cannot say as a matter of law that the conductor was insane. As plaintiffs were entitled to recover for their mortification and humiliation of feeling, which was necessarily great when, without provocation, they were cursed and insulted in the presence of other passengers, and in addition to compensatory damages were entitled to recover punitive damages, provided the conductor was not insane, and being unable to say as a matter of law that the conductor was insane, we cannot say that a verdict of $600 in each case was excessive.

We deem it unnecessary to discuss whether or not instruction No. 4 is a proper presentation of the law, for even if correct, the error is in favor of defendant, and may not be complained of.

The judgment in each case is affirmed.