## SWAYNE & HOYT, Inc., v. EVERETT.

(Circuit Court of Appeals, Ninth Circuit. January 6, 1919.)

### No. 3032.

1. AMBASSADORS AND CONSULS ⬅6—UNITED STATES COURT FOR CHINA—JURISDICTION.

Under Act June 30, 1906, § 1 (Comp. St. § 7687), giving the United States Court for China exclusive jurisdiction of all cases and judicial proceedings which had previously been exercised by consuls and ministers, except as qualified by section 2 (section 7688), that court has jurisdiction of suits between citizens of the United States in controversies which arose in China.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. CARRIERS ☞45—REFUSAL TO ACCEPT SHIPMENT—DEFENSES.

    A common carrier has the burden of affirmatively pleading and proving any fact which will exonerate it from liability for refusing to receive and carry goods tendered to it for shipment.

3. SHIPPING ☞105—REFUSAL TO ACCEPT SHIPMENT—LIABILITY.

    An American shipowner, operating a vessel between Chinese and American ports when England and Germany were at war, but the United States was neutral, was not exonerated from liability for refusing to accept lawful goods tendered by an American citizen for shipment to a German consignee at an American port, because its Shanghai agent was a British subject, and forbidden by his government to receive such shipments, nor because it did not know of such regulation.

In Error to the District Court of the United States for China; Charles S. Lobingier, Judge.

Action at law by Leonard Everett against Swayne & Hoyt, Incorporated. Judgment for plaintiff, and defendant brings error. Affirmed.

Ira A. Campbell and McCutchen, Olney & Willard, all of San Francisco, Cal., and Jernigan & Fessenden, of Shanghai, China, for plaintiff in error.

Fleming & Davies, of Shanghai, China, and Garret W. McEnerney, of San Francisco, Cal., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. This case comes here from the United States Court for China. It is a writ of error sued out by the defendant to an action there brought by the present defendant in error to recover damages for the refusal of the plaintiff in error, a common carrier, to receive, without lawful excuse, certain cargo offered it by the plaintiff to the action for shipment from Shanghai by the steamer Yucatan, which had been advertised to be on the berth at Shanghai for freight to San Francisco. The facts are practically undisputed, and are, briefly, these:

Swayne & Hoyt was a California corporation having its principal place of business at San Francisco, and was therefore an American citizen, and was a common carrier of freight between the Orient and that among other places. It had as its agent at Shanghai a British corporation, styled Jardine, Matheson & Co., Limited, and had under charter the said steamship for a voyage from San Francisco to China and Japan and return to San Francisco and other Pacific coast ports of the United States.

Prior to the arrival of the Yucatan at Shanghai, the plaintiff in the case applied to the agent of the defendant thereto for space in the ship in which to ship certain goods, in response to which application, after one denial of it, the agent agreed to provide the requested space upon condition that the application be approved by the British consul at Shanghai. That conditional acceptance was refused. The cargo offered for shipment by the plaintiff was being handled by him for German subjects, by reason of which fact he was blacklisted by the British government, and all British subjects, including the agent

of the defendant corporation, inhibited from dealing with the plaintiff respecting this particular shipment as well as all other such shipments. The defendant through its British agent having refused to accept the cargo offered by Everett, the action was brought, resulting in the judgment of the court below in his favor for $2,720.20, with costs.

But two questions of law are involved: First, whether the court below had jurisdiction of the subject-matter of the action; and, if so, then, secondly, its merits.

[1] By section 1 of the Act of June 30, 1906, creating the court below (34 Stat. 814, c. 3934 [Comp. St. § 7687]), that court is given "exclusive jurisdiction in all cases and judicial proceedings whereof jurisdiction may now be exercised by United States consuls and ministers by law and by virtue of treaties between the United States and China, except in so far as the said jurisdiction is qualified by section 2 of this act." The qualification specified in section 2 of the act (section 7688) has no bearing upon the present case, and therefore no further mention of it need be made.

At the time of the passage of the Act of June 30, 1906, there were in force the provisions of sections 4083, 4084, and 4085 of the Revised Statutes (Comp. St. §§ 7633–7635), by which certain judicial authority was conferred upon United States ministers and consuls in certain countries, including China, which jurisdiction embraced all controversies between citizens of the United States or others, provided for by its treaties. The treaty with China bearing upon the present question was that of June 18, 1858 (12 Stat. 1029), and conferred upon the United States the right to appoint consuls in various parts of China. Its 27th article is as follows:

"All questions in regard to rights, whether of property or person, arising between citizens of the United States in China, shall be subject to the jurisdiction and regulated by the authorities of their own government; and all controversies occurring in China between citizens of the United States and the subjects of any other government shall be regulated by the treaties existing between the United States and such governments, respectively, without interference on the part of China."

It is the contention of the plaintiff in error that the words "in China," in the foregoing article, qualify the word "citizens," and not the word "arising"; in other words, that a residence of the parties in China is essential to the existence of any jurisdiction in the court. We think it obvious that such a construction of the provision is wholly inadmissible, for the subject-matter thereby dealt with is controversies arising in China. The first clause of the provision relates to controversies in regard to rights, whether of property or person, there arising between citizens of the United States, and declares that they shall be subject to the jurisdiction and be regulated by the authorities of their own government; and by its second clause it is declared that all such controversies there arising between citizens of the United States and the subjects of any other government shall be regulated by the treaties existing between the United States and such governments, respectively—in each instance without interference on the part of China. We regard it as clear that this is the very plain meaning of the article in question. As said by counsel for the defendant in error,

the bare reading of its second clause is all that is necessary to show that the words "in China," there used, fixes, as the basis of the jurisdiction of the court, the place of the origin of the controversy, and not the residence of the parties thereto. No sound reason is suggested why a like construction should not be placed upon the first clause. To adopt the view urged by the plaintiff in error, would be, in effect, to hold a consular court in China vested with jurisdiction of a controversy between American citizens arising in the United States if they happened to be residents of China.

[2] Upon the merits we think the case equally clear. It does not admit of doubt that a common carrier, with certain well-established exceptions, is under legal obligation to carry the goods of any member of the public who may tender them for carriage. That such a carrier, subject to such legal obligation, may show that it was prevented from performing it by act of God or a public enemy, or by some other cause over which it had no control, is readily conceded, but in all such cases the defense is an affirmative one, and the burden is upon the carrier to both plead and prove it. 1 Michie on Carriers, § 381; Chicago, etc., R. R. Co. v. Wolcott, 141 Ind. 267, 39 N. E. 451, 50 Am. St. Rep. 320.

[3] At the time of the occurrences in question, England and Germany were at war, but the United States was not; on the contrary, this country was then observing strict neutrality beween those belligerents. How, then, can it be properly held that the performance of the clear legal duty of an American carrier to receive and transport goods tendered for carriage by an American citizen is excused on the ground that the British government had forbidden its citizens and corporations, one of which happened to be the agent of the American carrier, from receiving the tendered freight and providing for its transportation? Such is not the law as we understand it. See Richards & Co., Inc., v. Wreschner, 174 App. Div. 484, 156 N. Y. Supp. 1054, 158 N. Y. Supp. 1129, and the numerous cases there cited.

It is contended on behalf of the carrier that there was no evidence to show that it knew that its agent at Shanghai was inhibited by the British government from shipping the goods of the plaintiff in time to have employed an agent not under such disability. Whether or not the carrier knew of the inhibition at all, or was apprised of it in time to have employed another agent, the fact remains that the agent it did appoint, acting within the scope of his employment, deprived the plaintiff of his legal right. For that wrong we think the carrier was properly adjudged liable, even assuming that it was ignorant of its agent's disability. See Chesapeake & Ohio R. Co. v. Francisco, 149 Ky. 307, 148 S. W. 46, 42 L. R. A. (N. S.) 83.

The judgment is affirmed.