## Maryland Casualty Company v. Automatic Fire Protection Company, et al.

(Decided November 2, 1923.)

Appeal from Jefferson Circuit Court
(Common Pleas, First Division).

1. Appeal and Error—No Complaint of Error in Charge as to Right of Recovery by Party Recovering Verdict.—Even if the court erred in an instruction going to plaintiff's right to recover, plaintiff cannot complain thereof, where it recovered a verdict notwithstanding such instruction, though the amount of recovery was small.

2. Damages—Evidence Held to Show Duty of Night Watchman to Turn Off Water where Pipe in Sprinkler System Broken.—In an action against an automatic fire protection company to recover damages to goods from the breaking of a water pipe in an automatic sprinkler system, in which defendant claimed that plaintiff's assignor was negligent in not minimizing damages by turning off the water, evidence held to show that it was the duty of night watchman of assignor of plaintiff to turn off the water when a pipe was broken.

3. **Damages—Duty of One Who Suffers Loss to Minimize Damages from Breach of Contract Respecting Automatic Sprinkler System.** —It is the duty of one who suffers loss from another's breach of contract to exercise ordinary care to minimize his damages, and in an action for damages caused by the bursting of a pipe in an automatic sprinkler system, where plaintiff's assignor was negligent in not minimizing damages by turning off the water, damages were not recoverable for any loss that could have been so prevented, even though its contract with defendant may have made it defendant's duty to send a messenger for that purpose.

EUGENE R. ATTKISSON for appellant.

HUMPHREY, CRAWFORD & MIDDLETON, FRANCIS R. STARK and OVERTON HARRIS for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

The Belknap Hardware Manufacturing Company owned and maintained, in its warehouse No. 5, an automatic sprinkler system of the kind known as a "dry system" because the water was kept out of the pipes throughout the building by means of compressed air pumped therein. To guard against loss from any leakage from its sprinkler system, the hardware company carried a policy of insurance with appellant Maryland Casualty Company. It also had a contract with appellees, Automatic Fire Protection Company and American Protection Company, by which these two companies had installed and were maintaining automatic signaling devices in connection with its sprinkler system.

On the night of February 6, 1918, a pipe burst in the sprinkler system in warehouse No. 5, which allowed the air to escape from the pipes and the water to flow through them on to its stock of merchandise, and for the loss so occasioned, appellant paid to the hardware company $7,801.93, and the latter company assigned to it any claim it had therefor against appellees. Appellant then instituted this action against appellees to recover of them the $7,801.93 paid the hardware company in settlement of its loss, alleging that same was occasioned by appellee's breach of its contract with the hardware company.

A trial resulted in a verdict and judgment for appellant for $866.90, and for reversal thereof it complains that the court misconstrued the contract, and, as a consequence thereof, erred in rejecting evidence offered by it, and in instructions given and refused.

The contract provided for the installation and maintenance by appellees of two electrical signaling devices, one to notify their manager at his office in another part of the city whenever the air pressure in the pipes at the warehouse fell below a certain level, and the other to notify the manager whenever there was a flow of water through these pipes.

When the pipe burst in the warehouse company's sprinkling system upon the occasion involved here, the low air pressure device immediately signaled that condition to appellees' manager, as it was constructed to do, and that message was immediately relayed to the warehouse company's engineer at its plant, but the water-flow signaling device failed to operate from some unexplained cause, and appellees' manager was not informed that water was flowing through the pipes of the sprinkling system until the warehouse company's night watchman notified him of that fact by telephone. Appellees' manager, when so notified, dispatched a messenger to the warehouse, who turned off the valve in the sprinkling system at the warehouse, which stopped further flow of water.

There is much discussion in briefs of counsel as to whether or not, under the contract, appellees were bound to send a runner to the warehouse upon receipt of a low air pressure signal, as well as upon receipt of a water-flow signal. Another question ably discussed in briefs is the true meaning of "unforeseen casualty," as employed in a clause contained in the contract providing that appellees "shall not be liable for any loss that shall result from failure of any part of the equipment to operate due to any unforeseen casualty."

But we need not consider either of these matters, since under the evidence, the court's instructions, and the verdict of the jury, appellant could not have been injured in the least by any error with respect to either of these matters or that may have occurred upon the trial, unless it was such as affected the amount of appellant's recovery.

It is apparent and admitted by all parties, that the water-flow signal would have followed so closely the low air pressure signal as to leave no appreciable difference in time, if both devices had worked properly on this occasion, because when the pipe burst in the sprinkling system it was completely severed and fell apart, and the

instantaneous escape of the air was immediately followed by the flow of water through the pipes.

The court instructed the jury to find for appellant for any loss resulting from the failure of the water-flow signal to operate, unless they believed from the evidence that such failure was due to some unforeseen casualty. The jury found for appellant, and it cannot complain of the size of the verdict, which really is its only complaint, even if the court erred in defining "unforeseen casualty," which we do not think is true, since it recovered a verdict notwithstanding such definition.

Nor can it complain even if the court erred, as we do not think it did, in refusing to base a right of recovery upon the failure of appellees to send a runner upon receipt of the low air pressure signal, since it was allowed to recover, and did recover, for precisely the same loss for the failure of the water-flow signal to work at practically the same time, without reference to whether or not it sent a messenger.

The single matter complained of which could have affected the size of the verdict, and which under the evidence rather satisfactorily explains it, is that, over appellant's objections and exceptions the jury were instructed that if they found for appellant and if they believed from the evidence "that Jacob Johns did not exercise that degree of care mentioned in the third instruction as incumbent upon him, . . . then you can not hold the defendants (now appellees) responsible for any loss which you may believe from the evidence could have been avoided if Johns had exercised that degree of care."

The third instruction reads:

"It was the duty of Jacob Johns, the night watchman of the Belknap Company, when he discovered that water was flowing from a pipe of the sprinkler system, to exercise for the protection and safety of the Belknap stock that degree of care that is usually exercised by ordinarily careful and prudent persons under the same or similar circumstances."

The evidence shows without contradiction that Johns, who was the warehouse company's night watchman, learned of the break in the pipes and flow of water through them into the warehouse nearly as soon as appellees would have known of it had the water-flow signal device worked, and that he could have turned off the water from the pipes and stopped its flow about as soon, if not sooner, than a messenger from appellee's office

could have done so even if one had been dispatched when the low air pressure signal was received, or, which is practically the same thing, when the water-flow signal ought to have been received.

Hence, if the jury believed it was Johns' duty to turn off the water in his employer's sprinkling system when he discovered its flow, instead of simply telephoning his discovery to appellees, they might well have found for appellants under the evidence and the instructions for only so much of the loss as occurred between the time the messenger ought to have gotten there and the time the night watchman ought to have turned off the water. And evidently this is what they did, since, upon the most favorable view of the evidence for appellant, the sum allowed it bears about the same ratio to the whole loss as the above difference in time bears to the whole time the water was flowing into the warehouse.

It necessarily follows that the verdict is fully sustained by the evidence, even when viewed most favorably for appellant, and is erroneous only if the court erred, as is contended, in charging appellant with its assignor's night watchman's neglect of duty, if any.

It, of course, is not contended that appellant was not responsible for any neglect of duty on the part of the Belknap Hardware Company, in whose place it stands, but it is earnestly insisted it was not Johns' duty, under his employment, to turn off the water valve in his employer's sprinkler system, which would have stopped at once the damage being done to its stock of goods.

It is true he testified that he decided, after viewing the situation, he couldn't "handle" the trouble, and that it was not his duty to do anything but notify appellees, but he admitted that his employer had shown him the safety valves in the sprinkler system and explained to him their purpose and operation. From these admitted facts, and the very nature and evident purpose of his employment—to watch and protect the property of his employer—the only reasonable inference from the evidence is that it was his duty to use ordinary care to stop the loss, as certainly it was the duty of his employer, even though its contract with appellees may have made it their duty to send a messenger for the purpose.

It is as much the duty of one who suffers loss from another's breach of contract to exercise ordinary care to minimize his damages as it is of one who suffers damage from a tort, and there is no merit whatever in the conten-

tion that contributory negligence had no place in this trial because the action was for breach of contract and not in tort.

The court did not err in instructing upon contributory negligence, or in defining Johns' duties in relation thereto, and as the size of the verdict is thus readily explained —and justified by the law as well as the evidence—there is no merit in the final contention that the damages allowed do not equal the actual pecuniary loss sustained by appellant, which is, of course, only such loss as directly and proximately resulted from appellees' breach of contract, and not the amount they paid the hardware company, as counsel erroneously assume.

Perceiving no error in the record prejudicial to appellant's substantial rights, the judgment is affirmed.