# National Surety Company of New York v. Hester's Administrator.

(Decided December 18, 1931.)

EATON & BOYD for appellant.

CROSSLAND & CROSSLAND for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

The National Surety Company has appealed from a judgment for $1,000 recovered against it by the admin-

istrator of Ray Hester. In January, 1926, W. E. (Estil or Peck) Hunt was appointed as a county patrol of McCracken county, and he executed a bond, the essential part of which is:

## The Bond.

"Know all men by these presents. That we, Estil Hunt of Paducah in the State of Kentucky as Principal, and National Surety Company, a corporation duly organized and existing under and by virtue of the laws of the State of New York, and authorized to become sole surety on bonds in the State of Kentucky, as surety, are held and firmly bound unto the Commonwealth of Kentucky in the State of Kentucky in the full and just sum of One Thousand Dollars lawful money of the United States, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns jointly and severally, firmly by these presents. The conditions of the above obligations is such that Whereas the said Estill Hunt has been duly appointed to the office of County Patrolman for a term of indefinite years, or until his successor is duly elected or appointed and qualified.

"Now therefore, if the above Bounden, Estil Hunt, shall faithfully and truly perform all the duties of his office, and shall pay over and account for all funds coming into his hands by virtue of his said office of County Patrolman as required by law, then this obligation to be void, otherwise to be and remain in full force and virtue."

Hunt was reappointed in 1927, and he paid $10 to the agents of appellant to continue this bond, for another year, but it seems no new bond was executed.

## The Facts.

By section 3783 of the Statutes, McCracken county, which has in it a city of the second class, had authority and discretion to designate one or more of its patrols as motor patrols, and it had so designated Hunt, and had provided him with an automobile.

On April 23, 1927, some one had violated the law in Hunt's presence, and he in this county automobile was pursuing this violator in an effort to arrest him.

Ray Hester, a little 8 or 9 year old boy, ran across the street in pursuit of a ball with which he had been playing; he ran into the left side of the automobile Hunt was driving, was struck by the handle on the left door, and was killed instantly. The appellee, Chas. Easley, was appointed administrator of the boy's estate, and on May 5, 1927, he sued Hunt and recovered a judgment against him for $6,000. Execution against Hunt issued on this judgment was returned "No property found," November 30, 1927. The plaintiff alleges that after that he recovered a judgment for $5,000 against the Fidelity & Casualty Company of New York, and same was paid him upon this judgment, leaving a balance due thereon of $1,000.

### Institution of this Suit.

Conceiving that the act of Hunt which resulted in the death of this boy was a breach of his official bond aforesaid, the administrator on February 7, 1930, sued Hunt and appellant, alleging among other things:

"Now plaintiff states that the conditions of said bond have been broken by the said W. E. Hunt, who did not during the encumbency of said office faithfully and regularly perform and discharge all the duties of said office as county patrolman aforesaid, and he did violate the law in the performance of said duties, in that, by reason of his negligence and carelessness he did run over and kill Ray Hester, and was thereby guilty of malfeasance, misfeasance, and non-feasance in office, and the defendant, National Surety Co., of New York, is liable for and has thereby become indebted to the plaintiff as such administrator in the sum of One Thousand Dollars.

"Wherefore, the plaintiff Charles Easley, Administrator of Ray Hester, deceased, prays judgment against the defendant National Surety Company of New York for the sum of One Thousand Dollars, and for all costs herein expended, and for all proper relief."

This suit resulted as stated, and the National Surety Company has alleged many grounds for reversal which we shall now consider.

## Was Hunt Engaged in an Official Duty?

The first contention is that Hunt was not engaged in the discharge of any official duty when he ran against this boy, first, because he had no warrant for the arrest of the man he was pursuing; and, second, because he was then within the city of Paducah.

As Hunt testifies he was endeavoring to arrest this man for an offense committed in his presence, he did not need a warrant. See section 36, subsec. 2, Criminal Code of Practice. Our attention is not called by appellant to any law by which the sphere of a patrol's operation is limited to points in the county outside of the city of Paducah.

## Was Bond in Effect?

The contention is made that Hunt had no bond at the time of this accident; this being based on the contention that the bond given in 1926 had expired by its terms and had not been renewed in 1927, but an examination of the bond as given above will not disclose any terms in it limiting the liability to one year, and, while a new bond was not given in 1927, still the agents of the appellants admit the receipt of the required premium for its continuation, and the order of the county court made January 10, 1927, shows the bond was renewed.

Appellant contends that, unless Hunt did renew his bond, by section 3755, Ky. Stats., his office became vacant 30 days after his reappointment in 1927, and that on and after February 10, 1927, Hunt was not a county patrol for want of a bond. To determine this question it will be necessary to see if he were required to give a bond at all. This patrol law was originally a fugitive slave law approved November 29, 1799. See volume 2, Littell's Laws of Ky., p. 264. It was quite elaborate, and was the subject of frequent amendments. In 1851, what is now sections 3780 and 3781, Ky. Stats., had assumed their present form. See sections 1 and 2, Art. 1, c. 73, Vol. 2, Stanton's Revised Statutes. Section 3782 appeared in its present form in 1873. See section 3, c. 83, General Stats. Section 3783 is an outgrowth of section 5, Art. 1, c. 73, Vol. 2, Revised Statutes, and it has been the subject of frequent revision and amendment, especially in recent years. See Acts of 1904, c. 50, p. 124; Acts 1912, c. 27,

p. 137; Acts 1920, c. 80, p. 376; Acts 1922, c. 44, p. 159; and Acts 1926, c. 122, p. 601.

In all these acts from 1799 to date we have found but one provision requiring a patrol officer to give a bond, and that is in provision of what was section 1 of an act of 1894 (see Acts of that year, chapter 64, p. 160) which is now section 3784, Kentucky Stats., and which applies to counties containing cities of the first class. Thus we find Hunt was under no obligation to give a bond at all; hence was under no obligation to renew a bond, and did not vacate his office by failing to do so. Thus the bond he gave is not a statutory bond, but is a common-law bond, and, as it appears from its terms to have continued so long as Hunt was a patrol, the appellant cannot escape liability thereon for conduct of Hunt coming within its terms.

## Plea of Limitations.

Another ground urged for reversal is that this suit against the National Surety Company was not brought until February 7, 1930, two years, nine months and fourteen days after the happening of the fatal accident, and is therefore barred by section 2516, Kentucky Stats., but the limitation affecting the appellant's liability here is that contained in section 2551, Kentucky Stats. (seven years from accrual of the cause of action). See McGovern v. Rectanus, 105 S. W. 965, 32 Ky. Law Rep. 364, 14 L. R. A. (N. S.) 380.

## Liability on This Bond.

The provision of this bond was that Hunt "shall faithfully and truly perform all the duties of his office." What is included in this undertaking cannot be distinguished from the undertaking in question in the case of Fidelity & Casualty Co. of New York v. Boehnlein, 202 Ky. 601, 260 S. W. 353, in which we held:

"A surety upon a policeman's bond is liable for his negligence in operating a motorcycle, though the covenant is only that he 'shall well and faithfully discharge' his duties as a policeman, where the policeman in driving the motorcycle was doing precisely what his duties required him to do."

## The Instructions.

Appellant asked for a peremptory instruction based on matters we have already disposed of adversely to it and upon an alleged failure to show negligence on the part of Hunt, which the trial court properly overruled. The court then gave to the jury seven instructions, but we understand from the appellant's brief that its serious complaint is directed to instructions 6 and 7. It is right in this contention. Instruction 7 should have been in substantially this form: Although you may believe from the evidence that at the time of this accident Hunt was in pursuit of some one, who had violated the law in his presence, that he did not have his automobile under reasonable control, was not driving at a reasonable rate of speed, was not keeping a lookout ahead for persons on the street, was not exercising ordinary care to prevent injury to persons using the highway at the time, or was doing one or more or all of these things, if he did or was negligent in any other particular, if he was, yet if you shall believe and find from the evidence that Ray Hester came from a place of safety into the highway in such a manner and at a point so near to the path of the automobile driven by the defendant Hunt as to render probable a collision therewith, and he did this so suddenly that the defendant Hunt could not by the exercise of ordinary care and the use of the means at his command have avoided a collision with the said Ray Hester even if he had been driving at a reasonable rate of speed and had had his automobile under reasonable control, then the law is for the defendants, and you will so find.

Instruction No. 6 given by the trial court was: "The jury will find for the plaintiff only in the event that they believe from the evidence plaintiff's damages exceed five thousand dollars, and then not to exceed one thousand dollars, the amount claimed in the petition."

This instruction was erroneous, and was probably confusing and misleading to the jury. The plaintiff is really seeking to recover $6,000 for the death of his intestate. He admits in his pleadings the receipt of $5,000. The jury had heard no evidence about the payment of this $5,000, and properly so, for there is no issue about it, and nothing should have been said about it in the instructions.

Instruction No. 6 should have been in substantially this form: If you find for the plaintiff you should award him such a sum in damages as you may believe from the evidence will reasonably and fairly compensate the estate of Ray Hester for the destruction of his power to earn money, your finding, if any, not to exceed $6,000.

When the verdict is returned, if the jury shall find for the plaintiff, the court will subtract from the verdict the $5,000, which plaintiff admits he has received, and will enter a judgment for the remainder, if any.

The judgment is reversed.