## Drury v. Franke (two cases).

(Decided Feb. 28, 1933.)

STOLL, MUIR, TOWNSEND & PARK, FIELD McLEOD and WM. JESSE for appellants.

W. W. DOWNING, D. W. EDWARDS and H. A. SCHOBERTH for appellee.

OPINION OF THE COURT BY JAMES M. BENTON, CHIEF JUSTICE OF THE COURT OF APPEALS AS COMPOSED OF SEVEN SPECIAL JUDGES—Reversing.

The regular members of the Court of Appeals having declined to sit in these cases, that fact was certified to his Excellency, Ruby Laffoon, Governor of the commonwealth, who thereupon appointed and commissioned as Special Judges of the Court of Appeals to hear the appeals in these cases, the following practicing attorneys of the state: E. Bertram, Clifton J. Waddill, David R. Castleman, Robert C. Simmons, Victor A. Bradley, Charles D. Grubbs, and James M. Benton.

These two cases were tried together in the circuit court, and were heard together in this court. They grow out of the same occurrence and both cases will be considered in one opinion.

On the evening of December 2, 1931, Judge W. T. Drury, Commissioner of the Court of Appeals, and his daughter Elizabeth, his secretary, were en route from Frankfort, Ky., to Lexington, Ky., over highway No. 60, in a car owned and driven by the daughter. At a point a short distance north of Versailles, a collision occurred between the Drury car and a car owned and driven by E. C. Franke, Jr.

In this collision the Drury car was damaged to such an extent as to render it virtually valueless, and the occupants of the car were seriously and permanently injured. The Franke car was damaged to the extent of $639.19. Franke was not injured. Suits were brought by the occupants of the Drury car in the Woodford circuit court, Judge Drury asking for $26,566.85 damages, and his daughter asking for $5,487. Both actions were based upon a charge of negligence against Franke. The answers deny negligence, and charge contributory negligence, and to the W. T. Drury claim one paragraph of the answer pleads that Elizabeth Drury was negligent, and that her negligence was the sole cause of the collision. Another paragraph of the answer to the Elizabeth Drury claim is made a counterclaim based on the damage to the Franke car.

The jury that heard the two cases awarded Judge Drury $2,000 and his daughter $500. Deeming these sums to be flagrantly inadequate, the Drurys, after their motions for new trials were overruled, appealed to this

court. Franke did not make a motion for a new trial, nor has he asked or obtained a cross-appeal. The judgments which were rendered on the verdicts were collected on executions which the Drurys procured to be issued.

The Drurys urge as grounds for reversal: (1) That the verdicts are clearly, palpably, and flagrantly against the weight of the evidence; (2) inadequacy of the damages awarded; (3) error in instructions given by the court; (4) misconduct of counsel; and (5) misconduct of certain jurors in connection with their voir dire examination. These were the only questions discussed in the briefs, and in the oral arguments, and other suggested errors will be treated as waived.

In the course of the opinion the parties will be designated as they were in the trial court, plaintiffs and defendant.

1. At the threshold of the case the court is met with a motion of the defendant for the appeals to be dismissed on the ground that the plaintiffs coerced the collection of the sums recovered by having executions issued on the judgments. The amounts called for by the executions were paid to the sheriff by the defendant, and the judgments were thus satisfied. The contention of the defendant is that the plaintiffs, by reason of this, are estopped, and that their appeals should be dismissed.

The fact of the coercive satisfaction of the judgment is shown to this court by an answer as provided by section 758 of the Civil Code of Practice. The plaintiffs contend that the last sentence in section 757 secures to them the right of appeal. That section as originally adopted gave the right to have an appeal dismissed when it appeared that the appellant's right to prosecute it further had ceased. By an act of March 24, 1888 (Laws 1887-88, c. 669), these words were added to that section:

"But when a party recovers judgment for only part of the demand or property he sues for, the enforcement of such judgment shall not prevent him from prosecuting an appeal therefrom as to so much of the demand or property sued for that he did not recover."

Clearly but for that amendment the act of the plaintiffs in coercing a collection of their judgments

would estop them from appealing. This seems to be the tenor of all the authorities. The defendant's counsel argue earnestly that the Legislature could not have intended, by that amendment, to permit a litigant, disappointed in the amount of the verdict on an indivisible claim, to collect the amount of that verdict and then prosecute an appeal as to so much of his demand as he failed to recover.

The right to prosecute an appeal in such a situation presents many inconsistencies. One of these that deserves particular notice is suggested in the answer filed by defendant in this court in support of his motion to have the appeals dismissed. It is that, should the judgments in these cases be reversed and the cases then retried, and verdicts and judgments be obtained by the defendant, he would have no assurance that he would be able to collect back the money paid under the executions. This view is apparently accepted as sound by the plaintiffs, for in their reply to that answer they make this statement:

> "Appellants admit they have not assured appellee that if and when these judgments are reversed, and if and when new trials are had, that if and when appellee makes recoveries against these appellants that they will repay him the $3,443.61 he has expended, or any part of it, for the reason that these appellants do not recall any requirement of the law that they shall do so, or that there is any such requirement imposed upon them."

It is not clear from this statement whether the plaintiffs mean that they recall no rule of law that required them to give an assurance that in the event of a reversal they would repay to the defendant the money collected from him under the judgments, or, whether they mean that they know of no rule of law which would require them, in the event of a reversal of the judgments, to repay the money they had received under them.

The court is of the opinion that in the event of a reversal the right of the defendant to demand restitution exists, and that the trial court has ample authority to require the money collected under the judgments to be repaid. The rule requiring restitution in such cases is recognized by all the authorities. "When a judg-

ment is reversed, restitution must be made of all that has been received under it." Bridges, etc., v. McAlister, 106 Ky. 791, 51 S. W. 603, 605, 21 Ky. Law Rep. 428, 45 L. R. A. 800, 90 Am. St. Rep. 267. In Gregory v. Litsey, 9 B. Mon. 43, 48 Am. Dec. 415, Gregory had obtained a judgment against Litsey for $485.42, which the latter had paid and then appealed. The judgment was reversed. When the mandate was filed in the circuit court, a rule was granted against Gregory requiring him to show cause why he should not be compelled to refund the amount paid him by Litsey. The rule was made absolute and Gregory ordered to refund the money. On the appeal from this order it was affirmed. The case of Ex parte Walter Brothers, an Alabama case, reported in 89 Ala. 237, 7 So. 400, 401, 18 Am. St. Rep. 103, is perhaps the leading case on this question. In that case after a judgment had been paid, and reversed on an appeal, application was made for a writ of mandamus, directed to the chancellor of the court to require him to make an order of restitution in the case which was still pending in his court, requiring the plaintiff in the original suit to repay to the defendant the sum of money which he had paid under the judgment which was afterward reversed. The chancellor refused to make an order of restitution and the defendant, Brothers, appealed from that action. The appellate court in reversing the lower court, said in part:

"We can conceive of no case in which a party, who pays money on a decree which is subsequently reversed, is not entitled to have restitution of what he has paid, and to be thus reinstated in the position, and to all the rights he had prior to the rendition of the erroneous decree. It is not material what those rights were, or would probably, or even certainly and necessarily, be determined to be in the further progress of the litigation. He is entitled to have his final equities adjudicated while he yet occupies whatever vantage ground was his in the inception of the contest and from that standpoint to invoke the judgment of the law on the issues he presents."

Another excerpt from that opinion reads as follows: "He had no right to the money involved in the litigation, in contemplation of law, until there should be a correct determination of the matters in dis-

pute, however clear his rights may have been in point of fact. He, therefore, proceeds with the cause, having an undue advantage of his adversary, and is in fact in the attitude of having gained what he claimed before his right to it had or could have been determined. We entertain no doubt, therefore, of the absolute right to have restitution made on the one hand, and the absolute correlative duty to make restitution on the other, wholly regardless of considerations looking to the final equities of the parties."

In the concluding paragraph of the opinion this statement is found:

"That the chancellor before whom the cause is pending has the power to make an order for restitution in such case is not controverted. The parties are before him and in and about, and in the conduct of that cause they are subject to his control. The facts which constitute the only predicate for such an order—a decree, payment under it, and its reversal—are a part of the cause itself. There can be no dispute or mistake about them. On them the order for restitution goes as a matter of course."

We are unable to see that the situation here, if the judgments are reversed, is any different from the situation that would have existed had the defendant paid the judgments and then prosecuted an appeal and secured a reversal. The same rule with reference to restitution should apply to both situations. Nashville, C. & St. L. Rwy. Co. v. Bean's Ex'r, 128 Ky. 758, 109 S. W. 323, 33 Ky. Law Rep. 114, 129 Am. St. Rep. 333.

"A judgment which has been reversed is as though it had never been." Knight's Adm'r v. Ill. Central R. Co., 143 Ky. 418, 136 S. W. 874, 875.

The questions of restitution and how to accomplish it are questions which, in the event of a reversal, will address themselves to the trial court.

The effect of the amendment to section 757 has been considered in several cases. In Cravens v. Merritt, 178 Ky. 727, 199 S. W. 785, which was a tort action in which the plaintiff was awarded $1,000 in damages, the judgment was satisfied, and the plaintiff appealed,

and the defendant moved to dismiss the appeal. The court, in overruling the motion, quoted the amendment to section 757, and said:

"Construing this section, this court has on several occasions held that, where one sues for damages and recovers a sum less than the whole amount sought, and this judgment is satisfied, the plaintiff may prosecute an appeal as though the judgment had not been satisfied."

The opinion in that case quotes from Hendrickson v. New Hughes Jellico Coal Co., 172 Ky. 568, 189 S. W. 704, 705, also a tort case, in which the plaintiff recovered a judgment for $1,000 which was satisfied by the defendant, and after this was done the plaintiff appealed, and his appeal was met with a motion to dismiss, which motion was overruled by the court. The court in the Hendrickson Case said:

"Counsel for appellee argues in brief that this (the satisfaction of the judgment) constitutes cause for dismissal of the appeal; that by accepting satisfaction of the judgment appellant is precluded from appealing therefrom. This was the rule in this state prior to the amendment in 1888 of section 757 of the Civil Code, which changed the rule, as the amendment expressly allows an appeal to be prosecuted from a judgment, although the judgment may have been enforced. N. C. & St. L. R. Co. v. Bean's Ex'r, 128 Ky. 758, 109 S. W. 323 (33 Ky. Law Rep. 114), 129 Am. St. Rep. 333; Ohio River Contract Co. v. Pennebacher, 168 Ky. 78, 181 S. W. 946. There is nothing in the above receipt to indicate that the payment was made or accepted in compromise of the cause of action, but upon the other hand upon its face it states it was simply in satisfaction of the judgment. Since by the provision of our Code the enforcement of a judgment does not prevent an appeal therefrom, the acceptance of a voluntary payment of the judgment will not do so."

We do not see that this case can be distinguished from those two cases, and this construction of the effect of the amendment to section 757, being thus definitely established, we are constrained to adhere to it, and the motion to dismiss the appeals is therefore overruled.

2. Coming now to a consideration of the merits of the appeals, we may say, by way of preface, that in view of the verdicts for the plaintiffs, we must assume that the jury found that the defendant was negligent, and that Miss Drury, the driver of the other car, was not negligent; and, therefore, we are not required to consider the facts upon which the charges of negligence and contributory negligence are based; nor are we required to place the blame which caused the collision. We must assume that the evidence authorized a recovery by the plaintiffs. We express no opinion on that question.

The first complaint of the plaintiffs is that the amounts awarded in each case were flagrantly inadequate, and are, for that reason, against the evidence and violate the instructions given by the court.

The defendant insists that section 341 of the Civil Code of Practice expressly forbids a new trial or reversal on the ground of smallness or inadequacy of damages in cases of this character, if the damages awarded cover the actual pecuniary loss. Section 341 reads as follows:

"A new trial shall not be granted on account of the smallness of damages in an action for an injury to the person or reputation, or in any other action in which the damages equal the actual pecuniary injury sustained; nor shall more than two new trials be granted to a party upon the ground that the verdict is not sustained by the evidence."

Judge Drury claimed $514 for doctors' bills, $250 for future medical services, $689.35 for hospital bills, and $113 for certain incidental expenses, making a total of $1,566.85; and he claimed $25,000 for the pain and suffering he endured, and for the impairment of his ability to labor and earn money.

Elizabeth Drury claimed $85 for doctors' bills, $49 for hospital bills, $300 for damages to her automobile, and $53 for other incidental loss, making a total of $487. She claimed for pain and suffering and permanent disability $5,000.

There was no claim in either petition for loss of time. At the time of the accident Judge Drury was receiving a yearly salary of $5,000, and his daughter a monthly salary of $150.

The evidence shows that Judge Drury received these injuries: His left kneecap was cut in two, and 13 days after the injury an anesthetic was administered and a cut made, and the pieces of the kneecap were wired together, and the whole leg kept.in a cast for 13 days. His right leg was broken and kept in a cast for 39 days, when the cast was taken off and a second one kept on for 13 days longer. He had a broken collar bone and several ribs were broken. He received various other minor injuries. He was kept in the hospital for 102 days, and, after leaving the hospital, he was confined to his home for a month. He was walking on crutches and suffering from the injuries at the time of the trial, October 24, 1932. Dr. Garr, who treated Judge Drury in the hospital, expressed the opinion that a certain amount of the disability would be permanent.

Dr. Garr's testimony is that Miss Elizabeth Drury was in a state of shock; that she had a laceration about her forehead and a fracture of both bones of her right wrist. Splints were kept on the wrist for six weeks or more. Some deformity of the wrist will be permanent, and she will have permanent scars on her forehead.

Assuming that the jury allowed all that was claimed for actual pecuniary loss, only $433.15 was allowed Judge Drury for pain and suffering and permanent impairment of his ability, and only $13 was allowed his daughter on that account.

It is obvious that the amounts allowed on that account are totally inadequate to compensate the plaintiffs for the pain and suffering they endured, and for the permanent injuries they received. There is an extensive note in L. R. A. 1915F, page 514, which gives a long list of cases where sums awarded for damages have been held to be inadequate. Tested by a comparison with the verdicts in those cases, the verdicts here fall in the class of inadequate verdicts.

Unless section 341 of the Code deprives the court of the power to reverse a judgment on account of the smallness of damages allowed, the court would not hesitate to reverse the judgments under consideration on the ground that the verdicts do not afford the plaintiffs adequate compensation.

The defendant insists that section 341 stands squarely in the way of a reversal being had upon the

ground that the damages awarded are inadequate. Counsel for the plaintiffs vigorously and earnestly assail that position, and urge that section 341 conflicts with section 54 of the Constitution, and that, if it does not conflict with that section of the Constitution, it was, in effect, repealed by the adoption in 1888 of the amendment to section 757 of the Code.

Section 54 of the Constitution reads as follows:

"The general assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property."

It is the view of the court that this section simply prohibits the Legislature from prescribing the amount of damages to be recovered, or from placing a limit on the amount of the recovery, and that section 341 of the Code does not conflict with that view; nor can the court see that the act of 1888 conflicts with the inhibition found in section 341.

While the amendment gives to the plaintiff the right of appeal, if he does not recover all he claims, it does not attempt to define the grounds upon which the appeal shall be based. These grounds are fixed in the sections of the Code that give the grounds for a new trial (Civil Code of Practice, sec. 340 et seq.), and they are not limited to a single ground. There may be several in any particular case.

"It is a well-settled rule of law that the repeal of laws by implication is not favored in law, and the rule is that, if two acts or statutes can be upheld by a fair and reasonable construction, both will be allowed to stand." Robertson v. Robertson, 100 Ky. 696, 39 S. W. 244, 247, 19 Ky. Law Rep. 29.

The right of a litigant to appeal is not a matter of absolute or constitutional right, but it is a right given in some cases, by the Legislature, and in conferring that right, it is competent for the Legislature to say what cases may be appealed, and in what cases an appeal will not lie.

Section 110 of the Constitution, which fixes the jurisdiction and powers of the Court of Appeals, provides that the appellate jurisdiction shall be "under such restrictions not repugnant to this Constitution,

as may from time to time be prescribed by law." Judge Hobson, in expressing his views in L. & N. R. R. Co. v. Daniel, 131 Ky. 689, 115 S. W. 804, 1198, 119 S. W. 229, said:

"The right of appeal to this court is the creature of the statute, and the Legislature may annex any condition it sees fit to it."

In City of Paducah v. Ragsdale, 122 Ky. 425, 92 S. W. 13, 16, 28 Ky. Law Rep. 1057, this expression is found:

"It is solely within the legislative discretion whether an appeal in any case shall be granted. In the first half century of the commonwealth there were no appeals allowed in any criminal case, though capital"; and in Cullins v. Williams, 156 Ky. 57, 160 S. W. 733, 736, this expression is found: "The right of appeal is purely a matter of legislative discretion."

Since the oral argument of this case, our attention has been directed by counsel for plaintiffs to the case of Spannuth v. Cleveland, C., C. & St. L. Ry. Co. (Ind. App.) 133 N. E. 599, 600. The opinion is a very interesting one, and can reasonably be interpreted to sustain the plaintiffs' contention that section 341 presents no obstacle to a reversal on the ground of the inadequacy of the damages allowed. In that action Spannuth had obtained a verdict for $100. His motion for a new trial was on the ground that the verdict was contrary to law. The motion was resisted on the ground that it was an attempt to secure a new trial on account of the smallness of damages in violation of section 586 of the Indiana Statutes (Burns' Ann. St. 1914). That section is similar to our section 341.

By section 585 of the Indiana Statutes, a new trial may be granted for the following reasons:

"Fifth. Error in the assessment of the amount of recovery, whether too large or too small where the action is upon a contract or for the injury or detention of property.

"Sixth. That the verdict or decision is not sustained by sufficient evidence, or is contrary to law."

The Spannuth Case was a suit for $15,000 damages sustained by being struck and injured by a negligently operated train. The plaintiff was seriously and permanently injured. It appears from the opinion that both bones of both legs were broken above the ankles; that his left hand was lacerated; one finger thereof being cut off; that he was confined to his bed in a hospital 2 months, after which he was removed to his home and remained in bed 2 months longer. During 4 months he suffered intense pain. He had to use two crutches for a year, after which he used one crutch and a cane. He was unable to do any work or to earn any money for 20 months. At the time of the accident, and prior thereto, he was capable of, and had been earning $100 per month. As a result of his injury his left hand was permanently weakened, both ankles were stiff and they have but 1/15 and 1/20 of their normal motion. The bones of both legs are crooked and deformed so that he is unable to walk without great difficulty and pain. He claimed to have paid out a large sum of money for medical care and attention on account of his injuries, and that he lost a large sum of money because of inability to perform his usual duty.

It does not appear from the opinion whether the different claims were itemized, or just a claim made for the lump sum of $15,000. The court in discussing that case, said:

> "It is appellant's contention that the instruction of the court relative to the measure of damages became the law of the case; that it was the duty of the jury to apply the law to the evidence and to return a verdict in accordance with the law and the evidence, and, having failed to do so, the verdict is contrary to law."

The appellate court reversed the judgment which had given Spannuth $100. The only Indiana case cited in the opinion to support the reversal is Paxson v. Dean, 31 Ind. App. 46, 67 N. E. 112. That was an action for damages to property. The judgment in that case was reversed because the plaintiff was not awarded substantial damages. That was permissible under the fifth ground for a new trial quoted above. The court in the Spannuth Case quoted this paragraph from Phillips v. Southwestern R. Co., L. R., 4 Q. B. 406, an English case:

"We think the rule contended for has no application in a case of personal injury, and that it is perfectly competent to us, if we think the damages unreasonably small to order a new trial at the instance of the plaintiff. There can be no doubt of the power of the court to grant a new trial where in such an action the damages are excessive. There can be no reason why the same principle should not apply where they are insufficient in meeting the justice of the case."

The opinion in the Indiana case said the common-law rule was relaxed in the Phillips Case. The same statement is made in Benton v. Collins, 125 N. C. 83, 34 S. E. 242, 47 L. R. A. 33.

The Indiana court in announcing its conclusion in the Spannuth Case, said:

"The court having correctly instructed the jury as to the measure of damages, and the undisputed evidence being that appellant suffered actual pecuniary damages greatly in excess of the damages awarded, we hold that the verdict is contrary to law, and that it was reversible error to overrule the motion for a new trial."

Thus it may be that the real reason for the reversal was that the $100 awarded was not sufficient to cover the actual pecuniary loss shown to have been sustained. It is doubtful if the Indiana court intended to broaden the language of section 586 of the statute. See Thompson v. Town of Ft. Branch (Ind. Supp.) 178 N. E. 440, 82 A. L. R. 1413.

3. The effect of section 341 of the Code has assumed such an important bearing in this case, and its validity has been so vigorously and earnestly assailed, that we have determined to give a brief review of the Kentucky cases which have considered that section as affecting the power of the court to reverse a judgment on account of the smallness of damages awarded. The cases will be given in chronological order.

Even before the adoption of the Code, the rule expressed in section 341 was recognized as the correct rule of law. In Colyer v. Huff, 3 Bibb, 34, Chief Justice Boyle wrote:

"It is an invariable rule never to grant a new trial for the smallness of the damages, in an action

founded upon tort and sounding merely in damages."

This was an action for slander where a verdict was for 1 cent. The plaintiff was awarded a new trial and this action was reversed because of that fact.

The section of the Code, except the last clause which prohibits more than two new trials being granted on the ground that the verdict is not sustained by the evidence, was section 382 of the original Code of Practice, which was adopted March 22, 1851. It was numbered 370 in the Code of 1854.

The first case after the adoption of the Code in which this question was considered was Taylor v. Howser, 12 Bush, 465. This was a suit for damages growing out of an unlawful shooting. The verdict was, in favor of the plaintiff for 1 cent. The plaintiff had sued for the value of his services during the time he was disabled from his wounds, and the amount he had expended for medicines and medical attention in effecting a cure. The judgment in that case was reversed. Chief Justice Lindsay, in his opinion, quoted section 370, now section 341 of the Code, and stated that the rule of the Code was the rule of the common law, saying:

"This was the rule of the common law, and it was in the opinion of this court, as inexorable as our present statutory regulation."

After citing a South Carolina case, Bacot v. Keith, 2 Bay, 466, and two California cases, Hall v. The Emily Banning, 33 Cal. 522, and Mariani v. Dougherty, 46 Cal. 26, in which it was held that while it was not usual to grant new trials on account of the small amount of damages, yet, in extreme cases "in which every principle of justice had been outraged, that they could not hesitate a moment in ordering a new trial," the court said:

"Of course our statute precludes the idea of the courts of this state following these cases in actions for injury to person or reputation, when no special pecuniary injuries have been alleged and proved. In such cases, there is no definite and certain standard by which the damages to the party injured can be measured; and, therefore, the law

commits to the jury the duty of looking into the facts and circumstances of the particular case in hand, and of awarding, finally, the amount of the compensation to be made by the wrong-doer; and this award must be submitted to, although it may be clear that the jurors abused their discretion and made a mockery of justice."

One of the grounds upon which the judgment in that case was reversed was that the damages awarded did not cover the actual pecuniary loss, specially pleaded and proved, the court saying:

"These damages can be measured; and where the action of the jury is such as to demonstrate that as to these damages the proof was disregarded, and the law of the case, as embodied in the instructions of the court, disobeyed, then a new trial may and ought to be granted."

The next case was Ray v. Jeffries, 86 Ky. 367, 5 S. W. 867, 9 Ky. Law Rep. 602, a personal injury case, and the jury fixed the damages at 1 cent. The court quoted section 341, and from Taylor v. Howser, to the effect that "the reason of this rule does not apply to the assessment of the actual pecuniary damages resulting directly from the wrong," and said:

"Where the damages can be measured, and the injury is such as to demonstrate that, as to the damages, the proof and the law of the case were disregarded, a new trial ought to be granted. The injury received by appellant was a severe and permanent one, and the damages actually proved were capable of being measured, and the verdict should have been set aside, and a new trial granted, if he was entitled to recover at all."

The court found that the plaintiff was not entitled to a recovery and refused to reverse the judgment. The opinion does not show that the items of damage were separated. From all that appears in the opinion a lump sum of damages was asked.

Jesse v. Shuck, 12 S. W. 304, 11 Ky. Law Rep. 463, was an assault and battery case in which the jury found 1 cent for the plaintiff. The plaintiff appealed. The court quoted section 341, and said:

"This statutory rule follows the common law, and, in actions for injury to person or reputation, for-

bids any interference with the verdict on account of the smallness of the damages awarded."

Sears' Adm'r v. L. & N. R. R. Co., 56 S. W. 725, 726, 22 Ky. Law Rep. 152, was an action for damages for breach of contract. Plaintiff obtained a verdict for $50 and appealed. Citing section 341, the court wrote:

"We are not at liberty to award a new trial on account of the smallness of the damages fixed by the jury."

In Lloyd v. Knadler, 58 S. W. 803, 22 Ky. Law Rep. 776, an assault and battery case in which the plaintiff received a verdict for 1 cent and appealed, the court said:

"This section (341) is conclusive of the case."

In Stroh v. South Covington & C. St. Ry. Co., 78 S. W. 1120, 1121, 25 Ky. Law Rep. 1868, the plaintiff sued for bodily injuries. The final verdict was for $300. The plaintiff appealed, and the court said:

"Appellant's hope for a reversal because of the smallness of the verdict awarded her is based upon the testimony that she was engaged in the business of cloakmaking at the time she received her injuries, for which she was paid the sum of $10 per week; that up to the time of the accident she had always been healthful, and had never missed any time from her work; that since then she has been unable to work for a period of about three years; and that she has lost, by reason of loss of time occasioned by her injuries, the sum of $1,500."

. The court added:

"And it is urged that, although section 341 of the Code forbids the reversal of a case for personal injuries because of the smallness of the verdict, as to the amount which she lost in money by her inability to labor for the period named, that comes within the principle announced in Taylor v. Howser, 12 Bush, 468, and Ray v. Jeffries, 86 Ky. 367, 5 S. W. 867 (9 Ky. Law Rep. 602). Conceding this to be sound as a proposition of law, still appellant is not entitled to a reversal for the reason named, because the special damages arising by loss of time is not sufficiently pleaded."

The claim for loss of time was included in the lump sum of $1,500 which the plaintiff claimed to have suffered in the way of special damages. Section 341 was applied and a reversal was denied, although the proof showed the plaintiff had lost $1,500 because of her inability to work.

In Baries v. Louisville Electric Light Co., 118 Ky. 830, 80 S. W. 814, 815, 85 S. W. 1186, 25 Ky. Law Rep. 2303, 27 Ky. Law Rep. 653, the plaintiff sued for injuries received by coming in contact with a live wire. The jury returned a verdict for plaintiff and fixed the damages at 1 cent. The plaintiff sought a reversal, one of the grounds being that the verdict fixing the damages was flagrantly against the weight of the evidence. The court, after expressly holding that loss of time is pecuniary loss in contemplation of section 341, and after stating that the verdict showed a loss on that account of $800, held that the judgment could not be reversed on the ground that the verdict fixed the damages flagrantly against the weight of evidence, stating, "appellant is not entitled to a reversal because of the smallness of damages." The judgment was reversed on another ground. The claim for loss of time was not pleaded as a special item, and for that reason could not be treated as special damages.

In Pendly v. Illinois Central Ry. Co., 92 S. W. 1, 28 Ky. Law Rep. 1324, verdicts of $50 each had been returned against the joint defendants in a personal injury case. The plaintiff appealed. The court said:

"This case cannot be reversed alone because the damages are not adequate compensation for the injuries received."

This brings us to a consideration of the case of Netter's Adm'r v. Louisville Ry. Co., 134 Ky. 678, 121 S. W. 636, 637. The jury awarded $500 for the death of a child. The plaintiff appealed. One of the grounds upon which the reversal was sought was that the damages assessed were inadequate. The opinion quoted section 341, and cited Ray v. Jeffries, Jesse v. Shuck, and Baries v. Louisville Electric Light Company, and said:

"Adopting and following the reason of these cases, we are of the opinion that, in an action to recover damages for loss of life, a new trial might

be granted if there was evidence showing even approximately the pecuniary loss the estate of the deceased sustained, and it appeared that the amount assessed was wholly insufficient as compensation. And the same rule would apply in an action for an injury to the person if there was evidence showing the amount of the pecuniary loss the injured person had sustained by reason of his injuries in being deprived of the ability to follow his vocation in life, or otherwise unfitted for the performance of such services as he might have rendered except for his injuries, and this, independent of the amount sought to be recovered as special damages as for lost time or expenses in effecting a cure. But, where a recovery is sought solely for mental * * * pain or suffering, or where the action is to recover damages for the death of a person, and there is no evidence upon which to base an opinion as to the pecuniary loss suffered by his estate, the verdict of the jury will not be disturbed upon the sole ground that it is inadequate. It follows from this that in the case before us we are not at liberty to disturb the finding of the jury upon the ground that the assessment of damages was inadequate, because there was no evidence whatever tending to show the loss the estate of the deceased sustained by reason of her death, nor any pleading asking compensation in the way of special damages.''

In Schmidt v. Kentucky River Mills, 142 Ky. 80, 133 S. W. 1142, 1143, a personal injury case, the court in refusing to reverse on the ground of smallness of the damages awarded, said:

''No complaint is made as to the instruction on the measure of damages which was given as asked by the plaintiff; but it is insisted that the verdict should be set aside because of the smallness of the damages allowed. Section 341 of the Civil Code of Practice provides that a new trial shall not be granted on account of the smallness of damages in an action for an injury to the person, or in any other action in which damages equal the actual pecuniary injury sustained.''

Gaines et al. v. Madisonville, H. & E. R. Co., 143 Ky. 250, 136 S. W. 230, grew out of a breach of con-

tract. The court recognized the effectiveness of section 341, saying:

> "Although section 341 of the Civil Code provides that a new trial shall not be granted on account of the smallness of damages in actions like this, yet, when the smallness of damages is attributable to errors committed by the trial court affecting the substantial rights of the complaining party, the fact that the judgment cannot be reversed because of the small amount recovered does not preclude this court from granting a new trial if it should be granted for other reasons appearing in the record."

In Rossi v. Jewell Jellico Coal Co., 157 Ky. 332, 163 S. W. 220, 221, a personal injury case, referring to section 341, the court said:

> "In construing this section it has been held not to apply to actual pecuniary damages resulting directly from a wrong, which are capable of being measured. This exception, however, is confined to special damages, such as physicians' bills, medical bills, lost time, etc., when properly pleaded and proved. In such cases, if the jury disregards the evidence and the law, and finds for the plaintiff a sum wholly insufficient to compensate him for the special damages actually alleged and proved, a new trial should be granted. * * * In the present case no items of special damage were alleged or proved. Plaintiff sued merely for pain and suffering and the permanent impairment of his power to earn money. These items constitute general damages, * * * and, not being susceptible of accurate measurement, it is for the jury to fix the amount. As to such damages, the section of the Code, supra, applies with full force."

In Gnau et al. v. Ackerman et al., 166 Ky. 258, 179 S. W. 217, 222, a little boy between two and three years of age had sustained severe, painful, and permanent injuries. Suit was brought for damages and on the first trial there was a verdict for plaintiff for $1,000, which was set aside on motion of the plaintiff by the trial court, and on the second trial the plaintiff recovered $10,000. The defendants appealed from this judgment, and insisted as a ground for reversal that

the court erred in setting aside the first verdict for $1,000. The court referred to section 341 and said:

"Under this section the trial court is not authorized to grant a new trial in personal injury cases on the sole ground that the recovery is inadequate, independent of a recovery for special damages, if such damages are claimed."

The court added:

"Of course, if it appeared that the trial court set aside the first verdict solely on account of the smallness of damages, we would have a case coming directly within the provision of the Code denying to the trial court the right to set aside the verdict on this ground."

Conder v. Ledford, 167 Ky. 137, 180 S. W. 77, 78, involved a claim for damages growing out of a breach of contract. On the appeal it was insisted that the damages allowed were entirely disproportionate to the injuries shown. The court, after quoting section 341, said:

"In construing this section it has been held not to apply to actual pecuniary damages resulting directly from a wrong, which are capable of being measured. This exception, however, is confined to special damages, such as physicians' bills, medical bills, lost time, etc., when properly pleaded and proved. In such cases, if the jury disregards the evidence and the law, and finds for the plaintiff a sum wholly insufficient to compensate him for the special damages actually alleged and proved, a new trial should be granted. * * * In the present case no special damage was alleged or proved. The damages sought are general damages, and, not being susceptible of accurate measurement. it is for the jury to fix the amount. As to such damages the foregoing section of the Code applies with full force, and a new trial will not be granted on account of the smallness thereof in the absence of some other prejudicial error in the record."

The case of Paducah Traction Co. v. Walker's Adm'r, 169 Ky. 721, 185 S. W. 119, 121, merits more than passing attention. There were two cases and two trials of them. On the first trial each plaintiff was

given a verdict for $175. New trials were granted, apparently on the ground that the verdicts were inadequate. On the second trial each plaintiff was awarded $1,000. The traction company appealed, one of the grounds being that the court erred in setting aside the first verdicts. The court held that the trial court erred in setting aside the first verdicts and granting new trials, and reversed the judgments obtained on the second trials, and directed the trial court to reenter the original judgments for $175 in favor of each of the plaintiffs. The court said that while it was the rule of the court not to interfere with the discretion of the trial court in granting a new trial unless it clearly appeared that there had been an abuse of that discretion, added:

> "But this rule does not apply if the new trial was granted on account of the smallness of the damages independent of a recovery for special damages, because this is expressly prohibited by section 341 of the Civil Code, which this court has construed to include all cases in which it is sought to recover damages independent of special damages, whether the action be in contract or tort."

This case shows how careful the court is not to countenance any violation of section 341 by the trial courts.

In Chesapeake & Ohio Ry. Co. et al. v. Williams' Adm'r, 179 Ky. 333, 200 S. W. 451, 452, a personal injury case, the plaintiff had prosecuted a cross-appeal, and in denying it the court said:

> "Since only general damages were sought by plaintiff and allowed by the jury, we are not at liberty to grant a new trial on account of the smallness thereof, in the absence of some other prejudicial error in the record."

In Gregory et al. v. Republic Coal Co., 189 Ky. 758, 225 S. W. 1074, 1076, an action to recover damages for breach of contract, the court said:

> "The damages awarded in our judgment are at least equal to, if not in excess of, the actual pecuniary injury sustained by plaintiffs, under which view of the evidence section 341 of Civ. Code Prac. forbids a new trial."

Veach's Adm'r v. Louisville & I. Ry. Co., 190 Ky. 678, 228 S. W. 35, 37, was a personal injury case. The plaintiff had recovered a verdict, and deeming the amount inadequate, appealed and asked for a reversal. The court held that it was without power to reverse a judgment for smallness of damages, saying:

"Where only general damages, as in this case, are sought, as for pain and suffering, loss of earning power, or loss to estate by destruction of power to earn money, no new trial can or will be granted on account of the diminutiveness of the damages awarded."

Outland v. Dayer, 235 Ky. 492, 31 S. W. (2d) 725, 726, was a personal injury case. Outland had recovered a verdict in the lower court for $500, and insisted that that amount was inadequate. The court in denying his appeal said:

"The entire testimony as to the actual outlay of expenses as a result of plaintiff's injuries was, as we have indicated, but which does not include mental and physical suffering on account of consequential effects, and to which plaintiff testified, but which latter comes within the purview of seciton 341 of the Civil Code of Practice."

Lawson Ad'mr v. Brandenburg, 240 Ky. 68, 41 S. W. (2d) 201, 203, was a personal injury case where the plaintiff sued for $25,600, for pain and suffering and damage to a car, and was awarded $500. An appeal was prosecuted on the ground that the damages awarded were too small, which the opinion said, "was all of which the administrator could complain." The judgment was affirmed. The court said:

"The jury fixed the damages to the Plymouth car at some amount less than $500, and the sum needed to make up the $500 represents the jury's estimate of the personal injuries sustained by Mr. Lawson. That the jury did allow something for Mr. Lawson's injuries we know from the verdict. It is also evident the jury's allowance for personal injuries is small, but we are not permitted to reverse a judgment on that account."

The latest case on this question which has been reported is Owings' Adm'r v. Gradison Construction

Co., 241 Ky. 5, 43 S. W. (2d) 327, 328. This was a personal injury—a death case—which was tried three times, and on the last trial $400 was awarded for the death of Laura Owings. Uncontradicted evidence was that Laura Owings was a colored school teacher, had been earning about $90 a month, and had a life expectancy of 26 years. The appellant asked for a reversal of the judgment because the verdict was flagrantly against the evidence, and the damages awarded inadequate, and that the evidence authorized a larger verdict. The court refused to reverse the judgment and said:

> "We are controlled by section 341 of the Civil Code of Practice, which declares that a new trial shall not be granted on account of the smallness of damages in an action for an injury to the person or in any other action in which the damages equal the actual pecuniary injury sustained."

The court explained that the phrase "actual pecuniary injury" has been given the restricted meaning of money actually expended, or expenses incurred for special damages, such as medical treatment, loss of time, etc., and the like, which are capable of being ascertained with certainty, and added:

> "The granting of a new trial on account of the smallness of damages, independent of a recovery of special damages, has been held prohibited by the Code provision because pecuniary loss calculated on the earning power and expectancy of life of the deceased is necessarily speculative."

In this array of cases there are only two opinions, Ray v. Jeffries and Netter v. Louisville Railway Company, in which expressions are found that can be construed to support the view that section 341 does not stand in the way of a new trial being granted for inadequate damages allowed for pain and suffering and impairment or destruction of power to labor and earn money. The Netter Case is frequently cited to support that view. These expressions found in these opinions are out of line with the clear holdings in all the other cases. An examination of these two opinions shows that the expressions which are urged as authorizing a different construction to section 341 than was given in all the other cases were not necessary to the decisions actually made.

784

In the Ray Case the court refused to reverse the judgment in favor of plaintiff for 1 cent on the ground that the facts proved showed that the plaintiff was not entitled to a recovery. It was, therefore, wholly unnecessary for the court to discuss the question as to whether or not a reversal could be had for smallness of damages awarded for pain and suffering and impairment of ability to labor and earn money. The expressions in the opinion that discussed that question may well be considered dicta.

This is also true of the opinion in the Netter Case. In that case a five-year old girl had been instantly killed. In such a case there could be no claim for pain and suffering. The suit was for the destruction of the life of the child. There could have been no evidence of the value of her earning power. The administrator appealed from the judgment for $500. When met with the argument that section 341 prohibited a reversal, counsel for the administrator insisted that section 341 does not apply to death cases. The court held that the section "is fully as applicable to an action brought by the personal representative of a person whose life has been destroyed as it is to an action brought by the injured person in his own behalf." The opinion states that "because there was no evidence whatever tending to show the loss the estate * * * sustained by reason of her death, nor any pleading asked compensation in the way of special damages," the court was not at liberty to disturb the finding of the jury upon the ground that the assessment of damages was inadequate. As we have suggested, the case Judge Carroll was considering was one where, from the very character of it, no special damages could have been pleaded, or proved, where there could have been no claim for pain and suffering, and where the only recovery that could be had was for the destruction of the little girl's life; and the finding of the jury on this question was conclusive. The court dealt with the case then presented and it was not necessary for it to say what it would hold in a case presenting a different state of facts. "Cases are authority only on the questions they decide." Hill & MacMillan v. Taylor, 304 Pa. 18, 155 A. 103, 104, 75 A. L. R. 1022. We do not see that Judge Carroll by the unessential expressions written in that opinion committed the court to a construction of section 341 that its plain terms do not warrant.

We are fortified in this view by the fact that the opinions in the next two cases, Schmidt and Gaines, written by Judges Hobson and Carroll, gave section 341 the construction its language demands. Besides, in quite a recent case, Owings' Adm'r v. Gradison Construction Co., in which counsel for plaintiff had appealed from a palpably inadequate verdict in a death case, and relied upon the expressions written in the Netter Case by Judge Carroll, the court said:

> "The broad language used in the Netter opinion has been narrowed by interpretation and application of the rule in many subsequent cases."

An attorney not connected with this case has, as amicus curiæ, furnished the court with a brief in which he discusses the validity of section 341 of the Code of Practice. Quoting the definition found in 35 Corpus Juris 143, of what trial by jury means, one of the elements being that the trial is required to be "in the presence and under the superintendence of a judge empowered to instruct them on the law, and to advise them on the facts, and, except on the acquittal of a criminal charge, to set aside their verdict if in his opinion it is against the law and the evidence," the argument is made that while section 341 provides that a new trial shall not be granted for smallness of damages, it invalidates section 7 of the Bill of Rights, and possibly other sections of the Constitution. Section 7 reads as follows:

> "The ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, subject to such modifications as may be authorized by this Constitution."

The right of the Legislature to prescribe the grounds for which new trials can be granted has been recognized in perhaps all the states of the Union which have specified the grounds for which a new trial may be granted. This statement is found in 46 Corpus Juris 59, sec. 2:

> "It is entirely within the province of the legislature to restrict or to abridge the right to a new trial to any extent it may see fit, even to the extent of entirely denying to a litigant the privilege of moving for a new trial."

Then in 12 Corpus Juris 1239, sec. 1015, this statement is found:

> "The opportunity for a hearing having been duly afforded, due process of law does not require the granting of a right of appeal in civil cases. So the method of procedure of taking an appeal and the procedure in the appellate court, including the grounds on which a reversal may be had, are, in general, subject to regulation by the legislature."

Reference is made to three cases from other jurisdictions which are construed to hold that an act is void which prevents a court from granting a new trial or setting aside a verdict on the ground that it is either excessive or inadequate. The case of Yazoo, etc., R. R. Co. v. Wallace, 90 Miss. 609, 43 So. 469, 470, 122 Am. St. Rep. 321, arose under section 4910 of the Mississippi Code (1906) which reads as follows:

> "The circuit court shall not in any case have the authority to cause the plaintiff to enter a remittitur on pain of suffering a new trial, but if there is no other error committed during the trial of any such cause except that the verdict is, in the opinion of the court, excessive, the court shall overrule the defendant's motion for a new trial. But the supreme court may, when it thinks the verdict of the jury excessive, reverse the case unless the appellee will enter a remittitur in such sum as the supreme court shall direct."

A motion for a new trial was made on the ground that the verdict was excessive. The trial court, while conceding that the verdict was too much, held that under that section of the Code he had no power to interfere with the amount of the verdict. The appellate court said, "This statute is plainly unconstitutional and void." The reasoning of the court is not very clear. The court said:

> "It (the statute) is for the benefit of plaintiffs. It shuts out defendants from having complete and final disposition of their rights in a forum provided by the organic law for all, and into which they have been forced by plaintiffs. It compels them to appeal, which otherwise they might not wish to do, and then concludes with a clause, as a salve, by attempting, in the very face of the Con-

stitution, to give the Supreme Court original, instead of mere appellate, jurisdiction. It works only against the defendant litigant. If the verdict against him be for too much, he must bear the injustice; but note, if it be for too little, the favored plaintiff is not concluded but may move for new trial."

The expression that the statute concludes "with a clause, as a salve, by attempting, in the very face of the Constitution, to give the Supreme Court original, instead of mere appellate, jurisdiction," may furnish a reason why the statute was declared to be unconstitutional and void.

We do not see that the court held that depriving the trial court of the right to grant a new trial because the verdict was for an excessive amount, made the act void. The court, very likely, based its decision on the last sentence in the act, which in effect conferred original jurisdiction on the Supreme Court by permitting it to require the appellee to enter a remittitur in such sum as that court might direct.

Another case is St. Louis & North Arkansas Ry. Co. v. Mathis, 76 Ark. 184, 91 S. W. 763, 765, 113 Am. St. Rep. 85. The statute involved in that case reads as follows:

"The verdict of any jury rendered in any action for the recovery of damages where the measure thereof is indeterminate or uncertain, shall not be held to be excessive, or be set aside as excessive, except for some erroneous instruction, or upon evidence aside from the amount of the damages assessed, that it was rendered under the influence of passion or prejudice: Provided, that the circuit judge presiding at the trial may, on motion for a new trial filed by the losing party, if he deems the verdict excessive indicate the amount of such excess, and thereupon, if the losing party shall offer to file and enter of record a release of all errors that may have accrued at the trial if the prevailing party will remit the amount so deemed excessive, and the prevailing party shall refuse to remit the same, the verdict shall be set aside."

In that case an excessive verdict had been returned. The defendant had appealed. One of the con-

tentions made by the defendant was that the statute was void because it authorized curtailment by the legislative branch of the government of the appellate jurisdiction vested by the Constitution in the court. In the course of the opinion, the court said:

"The manifest intention of the framers of the Constitution was, primarily, to give a right of appeal to the Supreme Court from all final judgments of circuit and chancery courts," and, again, "The Constitution of the state confers upon this court, in the broadest terms, appellate jurisdiction coextensive with the state."

The court said the question for it to decide was "whether the statute in question is valid so far as it attempts to control this court in the determination of cases on appeal." The conclusion of the court was stated in this sentence:

"We therefore hold that it was beyond the power of the Legislature to prohibit an inquiry in this court as to the sufficiency of the evidence to sustain the amount of damages assessed by a jury, or require a litigant to surrender his right of appeal as a condition upon which he may accept the reduction by the trial court of an excessive verdict."

The language of the Arkansas Constitution in conferring jurisdiction upon the superior court is much broader than the language of the Kentucky Constitution, which, as we have shown, permits the Legislature to determine what cases shall be appealed.

The third case cited, Brown v. Buck, 75 Mich. 274, 42 N. W. 827, 5 L. R. A. 226, 13 Am. St. Rep. 438, simply holds that a legislative act is void which attempts to deprive courts of the right to deal with equity cases by equitable methods. On this question the court said:

"The cognizance of equitable questions belongs to the judiciary as a part of the judicial power, and under our constitution must remain vested where it always has been vested heretofore."

The only sentence in the opinion which is pertinent to the question involved here is this:

"As it is not competent for the legislature to deprive the supreme court of its revisory jurisdiction

over all the other state tribunals, no legislation which practically destroys it is valid."

A different rule obtains in Kentucky.

This amicus curiæ has copied in his brief the opinion in the English case of Phillips v. Southwestern R. Co., L. R., 4 Q. B. 406. That was a personal injury case where a new trial was ordered on the ground that the damages awarded, while sufficient to cover medical expenses and loss of time, this left "little or nothing for health permanently destroyed, and income permanently lost." It was contended by the defendant, that inadequacy of damages was not a sufficient ground for granting a new trial in an action for tort, and two cases were cited in support of that position. The court, in rejecting that view, drew a distinction between actions for slander and cases for personal injuries, saying:

"We think the rule contended for has no application in a case of personal injury, and that it is perfectly competent to us if we think the damages unreasonably small to order a new trial at the instance of the plaintiff. There can be no doubt of the power of the court to grant a new trial where in an action the damages are excessive. There can be no reason why the same principle should not apply where they are insufficient to meet the justice of the case."

As heretofore mentioned, the Indiana court in the Spannuth Case, and the North Carolina court in Benton v. Collins, said this opinion in the Phillips Case relaxed the common-law rule. There was evidently no act of Parliament standing in the way of a relaxation of the common-law rule. This distinction between slander suits and actions for personal injuries cannot be made under the provisions of the Kentucky Code for it places personal injuries and injuries to the reputation on the same footing.

We have also received a second supplemental brief for plaintiffs in which is cited the case of Hughey v. Sullivan (C. C.) 80 F. 72, 75, in support of the contention that section 341 is violative of the Seventh Amendment of the Federal Constitution and is therefore invalid. We suggest, in this connection that that amendment applies, by its terms, only to trials in the United States

courts. This Hughey Case was a wrongful killing in the state of Ohio. The case was tried in the federal court. A new trial had been granted on the ground that the damages assessed by the jury were inadequate. A motion was made to vacate that order on the ground that it was forbidden by the Ohio statute (Rev. St. sec. 5306), which is similar to our section 341 of the Civil Code. The argument in support of the motion was that the statute was a rule of property, prescribed by the Legislature of Ohio, and that, as an action for wrongful killing is purely statutory, the plaintiff was bound by the Ohio statute. The federal court did not rule on that question, but made this suggestion:

"There is another view of this subject to which it may be well to call attention. It may be doubtful if this Ohio statute prohibiting the granting of new trials for inadequacy of damages, could be held constitutional if it were binding upon the federal court. Our federal constitution, by the seventh amendment, provides that: 'The right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law.'"

After some general observations with reference to the functions of the trial judge in jury trials, the federal court held that the Ohio statute, if only a rule of practice or form of procedure, was not binding upon the federal courts, and the court's ruling that the order sustaining the motion for a new trial should not be vacated was based on that ground. There was no ruling that the state courts of Ohio would not be bound by the statute.

This supplemental brief cites the Mississippi and Arkansas cases and the English case, relied upon by the amicus curiæ in his brief, but we have already expressed our views as to the applicability of those cases to the question involved in this case.

In no Kentucky case has a reversal been ordered on the ground that the sum awarded for general damages was inadequate, the court holding in each case that the rule of section 341 is an inexorable one.

The Kentucky cases we have reviewed settle the question as to what constitutes special damages in per-

sonal injury cases, which can be definitely measured, and what are general damages in such cases. Special damages are physicians' bills, hospital bills, lost time, bills for medicines, and other incidental expenses incurred, while general damages consist of pain and suffering and permanent impairment of ability to labor and earn money. If the amount allowed to a plaintiff is insufficient to compensate him for the special damages alleged and proved, a new trial may and should be granted; but if any sum, however small, is allowed for general damages, a new trial cannot be granted, because of the smallness of that sum, and this, for the very good reason that no rule or formula has been evolved by which pain and suffering and permanent impairment of ability to labor can be reduced to dollars, or that will show the money value of any injury. In the phrase "actual pecuniary injury," each word is significant. Actual means existing in fact; being in existence or action now; existent, present. Pecuniary means consisting of or relating to money; monetary. It is used in this phrase in a different sense from its use in cases arising under the Federal Employers' Liability Act (45 USCA secs. 51-59). See L. & N. R. Co. v. Holloway's Adm'r, 168 Ky. 262, 181 S. W. 1126, and particularly the quotation from section 158 of Tiffany on Death by Wrongful Act. One of the synonyms for injury is loss. As used in the Code phrase the word "injury" may well mean an injury the result of which can be actually measured in money. Services of physicians, hospital and nurses expenses, medicines, and other incidental expenses, including loss of time, can be actually and definitely measured in money. Pain and suffering and impairment or destruction of power to labor cannot be so measured.

In none of the twenty odd cases, covering a period of eighty-two years, since the adoption of the Code of Practice, in which the court has considered section 341, has it been suggested that that section violates any provision of the Constitution, or that the efficacy of that section is affected by the amendment of 1888 to section 757 of the Code, and that fact is persuasive if not convincing evidence that the bar and the courts of the state have all along conceded the validity of this much discussed section.

Due regard for the doctrine of stare decisis re-

quires us to accept 341 as meaning just what it says. If the rule of that section is unwise or impolitic, the remedy rests with the Legislature; not with the courts. More than a century ago, in Colyer v. Huff, Chief Justice Boyle, writing for the court, said:

"The arguments of the counsel for the defendant in error, which admit the existence of the rule but tend to prove its inexpediency or injustice, cannot be entitled to weight. We have no authority to change or alter the established rules of law. Our functions are judicial, not legislative. We sit here to declare what the law is, and not what it ought to be."

The language of the section in question is not ambiguous. "When a statute is plain and peremptory there is nothing for the court to do but enforce it as it is written." Robertson v. Robertson, 100 Ky. 696, 39 S. W. 244, 245, 19 Ky. Law Rep. 29. It has been written that "hard cases make shipwreck of the law," Mercer v. Mackin, 14 Bush, 434, and we are unwilling to inflict such damage on a rule so firmly grafted upon the jurisprudence of the state.

The review of the Kentucky cases, which we have tried to make exhaustive, shows that regardless of what the rule may be in other jurisdictions, the courts of this state have accepted section 341 as fixing an inexorable rule, and we must adhere to it.

4. A ground for a new trial that the verdict is flagrantly against the evidence because the evidence authorized a verdict for a larger amount than the jury fixed, and the ground that the verdict was for an inadequate sum, mean one and the same thing. A plaintiff cannot dodge the effect of section 341 by placing his reliance upon the ground that the verdict is against the evidence in that it is for a smaller amount than the evidence authorized.

In the case of Thompson v. Town of Fort Branch (Ind. Sup.) 178 N. E. 440, 441, 82 A. L. R. 1413, the appellant insisted that a small verdict was not sustained by sufficient evidence and was contrary to law. The court said:

"In support of his points that the verdict of the jury is not sustained by sufficient evidence and is

contrary to law, the appellant discusses evidence bearing on the question of the amount of damages; appellant's theory being that, since the evidence shows damages greatly in excess of the amount of the verdict, the verdict is not sustained by sufficient evidence. It is well settled in Indiana that an assignment as cause for a new trial, that the verdict or finding is not sustained by the evidence, or is contrary to law, presents no question to this court as to the amount of damages."

This does not mean that the inadequacy of a verdict cannot be considered by the reviewing court. If a verdict is confessedly inadequate to compensate for the injuries sustained, that fact imposes on the court the duty of scrutinizing the record carefully to see if any error or irregularity occurred that might have conduced to bring about such inadequate verdict.

5. One of the grounds relied upon for reversal is that an error was committed in the instructions given to the jury. The only instruction in the W. T. Drury case of which complaint is made is the one marked 2A-1. This is the instruction which sets out the duties of the driver of the Drury car and provides that, if the driver failed in any one or more of those duties "and such failure was the sole cause of the accident," the jury should find for the defendant. We do not see that this instruction is susceptible of criticism. It is a correct statement of the principle of law applicable to the situation. The negligence of the driver of the Drury car could not be considered against Judge Drury unless that negligence was the sole cause of the accident. If the driver's negligence was the sole cause of the collision, no liability could attach to the defendant.

The only criticism of the instructions in the Elizabeth Drury case is that instruction 8 should not have been given. Instruction 7 properly defined the duties of Elizabeth Drury as driver of her car, and provided that, if she failed in one or more of said duties, and thereby caused the accident, "the jury should find for the defendant." This was in effect an instruction on contributory negligence, although it does not use that expression. Instruction No. 8 is in the nature of an abstract instruction, and states correctly an abstract proposition of law, but we do not see that it was neces-

sary, after instruction No. 7 was given, for this instruction No. 8 to be given.

The instructions in this case would have been more consistent if in the first instruction the words "or if you believe as stated in the seventh instruction" had been inserted between the words "believe" and "you," in the last line of the first instruction. Without these qualifying words the first instruction required the jury to find for the plaintiff, regardless of the question of contributory negligence. Then the eighth instruction could very well have been omitted, and the seventh instruction closed after the word "accident," with the words, "or thereby contributed to such an extent in bringing it about that but for such failure on her part, if any, the collision would not have occurred, then the law is for the defendant as against the plaintiff, Elizabeth Drury, and in her case you should find for the defendant"; or those words in substance. Then instruction No. 9 on the defendant's counterclaim should have used the words "should find," instead of "may find," and omitted the words "in your discretion." If Elizabeth Drury's negligence caused the accident, and the defendant was not guilty of contributory negligence, this made it the duty of the jury to find for the defendant on the counterclaim, and it was not a matter left to the discretion of the jury.

These criticisms of the instructions are not matters of which the plaintiffs can complain. If they were errors, they were not prejudicial to the plaintiffs. The verdicts cured them. The jury found that the defendant was negligent, and the instructions criticized by the plaintiffs could not have affected that finding. Netter's Adm'r v. Louisville Ry. Co., 134 Ky. 678, 121 S. W. 636; Schmidt v. Kentucky River Mills, 142 Ky. 84, 133 S. W. 1142; Rossi v. Jewell Jellico Coal Co., 157 Ky. 332, 163 S. W. 220; Veach's Adm'r v. L. & I. Ry. Co., 190 Ky. 678, 228 S. W. 35; Maryland Casualty Co. v. Automatic Fire Protection Co., 200 Ky. 750, 255 S. W. 548; Lawson's Adm'r v. Brandenburg, 240 Ky. 68, 41 S. W. (2d) 201; Owings Adm'r v. Gradison Construction Co., 241 Ky. 5, 43 S. W. (2d) 327, and many other cases.

6. Another complaint urged by plaintiffs is that one of the attorneys for the defendant made an improper argument, in that during his argument he had

before him a copy of a deposition given by the defendant, but which was never introduced in evidence, from which he read and quoted to the jury. The bill of exceptions shows what the attorney said, and when compared with what the witness Franke said from the witness stand, there seems to be no material difference in the statements. However, the bill of exceptions by which we are controlled does not show that there was any exception to any ruling or action of the court with reference to this matter, and it therefore cannot be considered as a ground for reversal.

7. The final complaint of the plaintiffs is that certain of the jurors did not make frank or any answers to a question that was asked the jurors on their voir dire examination. The bill of exceptions shows that when the jurors were being examined, this question was asked the panel:

> "Have any of you ever been in any way involved in an automobile collision, or is there now pending either by or against you, any litigation growing out of an automobile collision?"

The bill further recites that no one of the panel of eighteen jurors spoke up in response to the question, and all of them remained silent, thereby indicating a negative answer thereto. It was learned by the plaintiffs after the trial, and after the jury had been discharged, that four of the jurors, to wit, W. H. Baker, Robert J. Baker, James R. Carroll, and John W. Howard, had been theretofore involved in automobile collisions, but there was no litigation pending growing out of such collisions. These four jurors, all of whom had served on the Drury jury, were called together, and statements were obtained from them showing the facts about the collisions in which they had been involved. This did not violate the rule which does not permit the verdict to be impeached by the testimony of jurors. The collisions in which the two Bakers and Carroll had been involved had occurred a number of years before, and were of a trifling nature, and it is quite likely that the fact of these collisions had passed out of their memories. As to the juror Howard, a different situation is presented. He had been involved in an automobile collision comparatively recently, and a claim was pending against him which, however, had not reached the point of litigation. The facts with refer-

ence to all of these collisions are set out in the bill of exceptions.

We cannot know what the attitude of these jurors, especially juror Howard, was in the jury room. If it were antagonistic to the cases of the plaintiffs, we cannot speculate as to what effect it had on the verdicts that were returned. Although Howard did not agree to or sign the verdict, his attitude may have influenced the jurors who made the verdicts to fix the damages at small amounts.

The information which was sought to be elicited by the question addressed to the jury panel was pertinent to enable the plaintiffs to intelligently exercise their challenges, a valuable right. If the truth had been learned, they might have challenged some of these jurors peremptorily. In the case of Trent, etc., v. Chesapeake & Ohio Ry. Co., etc., 221 Ky. 622, 299 S. W. 556, 558, the court quoted from section 2253 of the Kentucky Statutes, as follows:

"The fact that a person not competent served on the jury shall not be cause for setting the verdict aside, nor shall exceptions be taken to any juror for such cause after the jury has been sworn."
In that case the court said:

"This section does not apply to the action of the court in improperly forming a jury in a civil cause. Or to misconduct upon the part of a juror in failing to answer questions truthfully on the voir dire, by which a party is misled."

In Stein v. Chesapeake & O. Ry. Co., 132 Ky. 322, 116 S. W. 733, 738, the court wrote:

"A juror on his voir dire qualified, declaring that he had not formed nor expressed an opinion concerning the merits of the case. But he had. The fact was not learned by appellant until after the juror had signed and returned the verdict, and the jury discharged. This was urged as a ground for a new trial. Being established, it should have prevailed."

The reasons why a litigant is entitled to a new trial because a juror gave a false answer, or no answer, to a pertinent question addressed to him on the voir dire examination are set out at length in the case of Shu-

linsky v. Boston & Maine R. R., 83 N. H. 86, 139 A. 189.
When the jury was empaneled a juror was asked
whether he had had any business relations with or was
a creditor or debtor of the plaintiff, and the juror re-
mained silent. This juror was not challenged. It
later appeared that he had signed a number of notes
with the plaintiff on which the latter had borrowed
money, and that one of these notes for $200 was out-
standing at the time of the trial. The Supreme Court,
in ordering a new trial, announced these ' principles:
When the right of challenge is lost or impaired, the
statutory conditions and terms for setting · up an au-
thorized jury are not met; the right to challenge a
given number of jurors without showing cause is one
of the most important rights to a litigant; any system
for the empaneling of a jury that prevents or embar-
rasses the full, unrestricted exercise of the right of
challenge must be condemned; a litigant cannot be com-
pelled to make a peremptory challenge until he has
been brought face to face in the presence of the court,
with each proposed juror, and an opportunity given for
such inspection and examination of him as is required
for the due administration of justice; the right to re-
ject jurors by peremptory challenge is material in its
tendency to give the parties assurance of the fairness
of a trial in a valuable and effective way; the terms of
the statutes with reference to · peremptory challenges
are substantial rather than technical; such rules, as
aiding to secure an impartial, or avoid a partial, jury,
are to be fully enforced; the voir dire is of service not
only to enable the court to pass upon a juror's qualifi-
cations, but also in assisting counsel in their decision
as to peremptory challenge; the right of challenge in-
cludes the incidental right that the information elicited
on the voir dire examination shall be true; the right
to challenge implies its fair exercise, and, if a party is
misled by erroneous information, the right of rejection
is impaired; a verdict is illegal when a peremptory
challenge is not exercised by reason of false informa-
tion; the question is not whether an improperly estab-
lished tribunal acted fairly, but it is whether a proper
tribunal was established; if false information prevents
a challenge, the right is so disabled and crippled as to
lose its essential value and efficacy, as to amount to its
deprivation; the fact that a juror disqualified either on
principal cause or to the favor has served on a panel

is sufficient ground for setting aside the verdict, without affirmatively showing that that fact accounts for the verdict; it is highly important that the conflicting rights of individuals should be adjudged by jurors as impartial as the lot of humanity will admit; next to securing a fair and impartial trial for parties, it is important that they should feel that they have had such a trial, and anything that tends to impair their belief in this respect must seriously diminish their confidence and that of the public generally in the ability of the state to provide impartial tribunals for dispensing justice between its subjects; the fact that the false information was unintentional, and that there was no bad faith, does not affect the question, as the harm lies in the falsity of the information, regardless of the knowledge of its falsity on the part of the informant; while willful falsehood may intensify the wrong done, it is not essential to constitute the wrong; that the injury is brought about by falsehood, regardless of its dishonesty, and the effect of the information is misleading, rather than a purpose to give misleading information is the gist of the injury; when the fact appears that false information was given, and that it was relied upon, the right to a new trial follows as a matter of law.

The court approves these principles and when they are applied to these cases they entitle the plaintiffs to a reversal of the judgments.

8. The defendant contends that one of the attorneys for the plaintiffs knew that the juror Howard had been involved in an automobile collision, and that this knowledge of their counsel was imputed to the plaintiffs, and that they are estopped from claiming to be ignorant of a fact that was known to their attorney.

The knowledge of their attorney had not come to him in connection with his employment in these cases. The rule seems to be that in order for a client to be affected by his attorney's notice or knowledge of facts, such notice must have been acquired in and during the transaction in which the attorney is engaged, and that the client will not be chargeable with notice of facts acquired by the attorney prior to the relation of attorney and client, or while acting for another client. 2 R. C. L. 963; 6 C. J. 640; Downer v. Porter, 116 Ky. 422, 76 S. W. 135, 25 Ky. Law Rep. 571.

This rule is modified to some extent by the English courts, and the courts of some of the states have followed the modified rule; but in those states the courts hold that before the client can be charged with the knowledge of the attorney, there must be clear proof that the knowledge which the attorney once had, and which he had obtained in another transaction, at another time, and from another client, was present in his mind at the very time of the transaction in question; the burden resting upon the one claiming the existence of the knowledge to prove it. 2 R. C. L. 965; 6 C. J. 640; Wittenbrock v. Parker, 102 Cal. 93, 36 P. 374, 24 L. R. A. 197, 41 Am. St. Rep. 172; Matthews v. Damainville, 100 App. Div. 311, 91 N. Y. S. 524.

In Barnes v. Commonwealth, 179 Ky. 725, 201 S. W. 318, relied upon by the defendant, the knowledge of the attorney had come to him in connection with the very trial in which he was then engaged, and his client was properly charged with the same knowledge.

In Lisanby v. Illinois Central R. R. Co., 209 Ky. 325, 272 S. W. 753, 754, the court said:

"It must be admitted that, in the preparation and trial of a lawsuit, the attorney acts as the agent of his client, and that the client is bound by the acts of his attorney in the course of that litigation. It is also the general rule that knowledge of an attorney, at least where acquired in the course of his employment, is knowledge of his client."

We are disinclined to hold that the knowledge of the attorney, with reference to the juror Howard's conquent controversy, can be imputed to the plaintiffs.
nection with an automobile collision and the conse-

9. A suggestion is made by counsel for plaintiffs that upon another trial only the question of general damages should be tried, or that the cases should be retried without any reference to the former trial, and, if verdicts for the plaintiffs are returned, they can be credited by the sums they have received under the former verdicts. Authorities are cited to support this suggestion. One of the cases is National Surety Company v. Hester's Administrator, 241 Ky. 623, 44 S. W. (2d) 563. We do not consider the situation in that case as fitting the situation in these two cases. In that

case $5,000 had been paid the plaintiff by a third party, and the defendant there had no interest in that payment. No question of restitution was involved. Here the defendant denies liability for any amount, and on another trial he may be able to produce evidence that will induce the jury to render verdicts for even smaller amounts than were returned on the other trial, or that will convince the jury that he was not negligent which would entitle him to a verdict in the W. T. Drury case, and a finding on his counterclaim against Elizabeth Drury. The defendant should not be deprived of this right. Then, too, this difficulty occurs to us: We know that something in addition to the special damages was awarded to each of the plaintiffs. Just what sums were allowed for general damages we cannot know with certainty. In Benton v. Collins, 125 N. C. 83, 34 S. E. 242, 243, 47 L. R. A. 33, one of the authorities cited by counsel, the court said:

> "Before such partial new trials, however, are granted, it should clearly appear that the matter involved is entirely distinct and separable from the matters involved in the other issues, and that the new trial can be had without danger of complications with other matters. Such partial trials are not of strict legal right, but of sound legal discretion."

In Irvine v. Gibson, 117 Ky. 306, 77 S. W. 1106, 1109, 25 Ky. Law Rep. 1418, 111 Am. St. Rep. 251, 4 Am. Cas. 569, the court said:

> "If the judgment is erroneous, we can only reverse it, and our jurisdiction over the case ceases with its reversal. The remittitur cannot be entered after the reversal, for the further reason that there will be nothing upon which it can operate, because by the reversal the judgment is rendered void."

In Knight's Adm'r v. Illinois Central R. R. Co., 143 Ky. 418, 136 S. W. 874, 875, the court said:

> "A judgment which has been reversed, is as though it had never been."

As we have stated under the discussion of the question of restitution, the defendant is entitled to be placed in statu quo, and this case will have to be tried de novo, unaffected by the former trial and what was done under it.

The judgments in both cases are reversed, and the cases remanded for new trials not inconsistent with this opinion. Whole court sitting and concurring.